BRONSON METHODIST HOSPITAL v
AUTO-OWNERS INSURANCE COMPANY

BRONSON METHODIST HOSPITAL v
HOME-OWNERS INSURANCE COMPANY

Docket Nos. 300566 and 300567. Submitted December 14, 2011, at Grand
Rapids. Decided February 16, 2012, at 9:00 a.m. Leave to appeal
denied, 493 Mich 880.

Bronson Methodist Hospital brought separate actions in the
Kalamazoo Circuit Court against Home-Owners Insurance Com-
pany and Auto-Owners Insurance Company, respectively, after
each defendant had failed to pay plaintiff for surgical implant
products billed to the companies' insureds following their treat-
ment at the hospital for injuries suffered in automobile accidents.
Defendants had requested invoices showing the cost to the hospital
of those surgical implant products, but the hospital had refused to
provide the information. The hospital sought to recover the unpaid
amounts, statutory interest, and attorney fees under the no-fault
motor vehicle insurance act, MCL 500.3101 *et seq.* The actions
were consolidated. The court, Alexander C. Lipsey, J., denied
defendants' discovery request seeking, in part, information re-
garding the wholesale cost to the hospital of the surgical implant
products. The court granted summary disposition in favor of the
hospital and awarded it penalty interest, but denied the request
for attorney fees. Both defendants appealed separately the denial
of the discovery requests and the granting of summary disposition
in favor of the hospital. The hospital cross-appealed the denial of
its request for attorney fees. The appeals were consolidated.

The Court of Appeals *held*:

1. In accordance with defendants' clear statutory right and
obligation to question the reasonableness of the charges, the
no-fault act permits defendants to discover the wholesale cost to
plaintiff of the surgical implant products for which the insureds
were charged when determining whether plaintiff's charges for
the products are reasonable under the act.

2. Defendants' ability to assess the reasonableness of provider
charges is not limited to a comparison of customary charges among

similar providers. The no-fault act contemplates that, as occurred in these cases, insurers will assess the reasonableness of a provider's charges, paying that portion deemed reasonable, with the provider having the prerogative to then challenge the insurer's decision not to pay the entire charge submitted by filing suit. Once an action is filed, the provider has the burden of proving the reasonableness of its charges by a preponderance of the evidence. Thus, defendants were permitted to consider the cost to plaintiff of providing treatment to the insureds and not merely the cost of treatment as billed by the provider when evaluating the reasonableness of the charges submitted for payment. This ruling was limited, however, to the sort of durable medical-supply products at issue in this case, which are billed separately and distinctly from other treatment services and require little or no handling or storage by a provider. The surgical implant products at issue in this case were standalone items that could be easily quantified. Therefore, plaintiff must come forward with evidence to convince a jury that the charges for the durable medical equipment were reasonable.

3. Plaintiff's actual cost for the surgical implant products would throw some light on the reasonableness of plaintiff's charges to the insureds. The trial court should have compelled plaintiff to provide that information. Plaintiff's actual cost for the products would not be dispositive on the issue whether its charges to the insureds were reasonable; however, the actual cost of the products would be a piece of the overall collage of factors affecting the reasonableness of plaintiff's charges. The reasonableness of the charges was a question of fact for the jury to determine, and the jury can only make such a determination if it has been provided all relevant and probative evidence. The trial court erred when it denied defendants' motion to compel discovery. Because of the error, summary disposition in plaintiff's favor was prematurely and improvidently granted. Plaintiff wholly failed to provide the trial court with some basis for concluding that its charges were reasonable and that there was no factual issue for trial. A provider's customary charges are not necessarily reasonable and the mere fact that a provider believes its charges to be reasonable does not make it so.

4. MCL 500.3148(1) provides for an award of reasonable attorney fees when an insurer unreasonably withholds benefits. A refusal to pay or a delay in payment by an insurer is not unreasonable if it is based on a legitimate question of statutory construction, constitutional law, or factual uncertainty. The determinative factor for an award of attorney fees when an insurer

withholds benefits is not whether the insurer ultimately is held responsible for the benefits, but whether its initial refusal to pay was unreasonable. The trial court did not abuse its discretion by declining to award plaintiff attorney fees on the basis that defendants' refusal to pay was based on a legitimate question of statutory construction. Because insurers have a duty under the no-fault act to audit and challenge the reasonableness of charges submitted for payment, defendants were required to assess the reasonableness of plaintiff's charges for the surgical implant products. Defendants' actions in paying only the undisputed portions of the bills were reasonable under the circumstances, and the attorney-fee penalty provision of the act was thus not triggered. The portion of the trial court's order granting plaintiff summary disposition was reversed and the portion of the order denying plaintiff's request for attorney fees was affirmed.

Affirmed in part, reversed in part, and remanded.

INSURANCE — NO-FAULT — INSURER'S DUTY TO QUESTION REASONABLENESS OF PROVIDER'S CHARGES — DURABLE MEDICAL SUPPLY PRODUCTS.

The no-fault act permits insurers to discover the wholesale cost to the provider of durable medical-supply products, such as surgical implant products, that are billed separately and distinctly from other treatment services and that require little or no handling or storage by a provider for purposes of determining whether the provider's charges for the products to insureds are reasonable under the act; the provider's actual cost of the products is not dispositive on the issue whether the provider's charges are reasonable, but is a factor that affects the reasonableness of the charges (MCL 500.3101 *et seq.*).

*Miller Johnson* (by *Richard E. Hillary, II,* and *Joseph J. Gavin*) for plaintiff.

*Kuiper Orlebeke PC* (by *Jack L. Hoffman*) for defendants.

Before: HOEKSTRA, P.J., and K. F. KELLY and BECKERING, JJ.

PER CURIAM. Defendants, Home-Owners Insurance Company and Auto-Owners Insurance Company, appeal as of right a trial court order granting summary dispo-

sition in favor of plaintiff, Bronson Methodist Hospital, pursuant to MCR 2.116(C)(10) in these consolidated cases concerning the reasonableness of charges for surgical implant products billed by plaintiff to defendants' insureds under the no-fault insurance act, MCL 500.3101 *et seq.* Plaintiff cross-appeals that portion of the trial court's order denying its motion for attorney fees under MCL 500.3148. We consolidated the appeals and affirm in part, reverse in part, and remand. We conclude that, in accordance with defendants' clear statutory right and obligation to question the reasonableness of the charges, the no-fault act permits defendants to discover the wholesale cost to plaintiff of the surgical implant products for which the insureds were charged. Therefore, the trial court erred when it denied defendants' prior motion to compel discovery. Because of the error denying discovery, summary disposition was granted prematurely. We also stress that the ultimate burden of proof regarding the reasonableness of the charges rests with the provider. Finally, we conclude that the attorney-fee penalty provision of the no-fault act was not triggered.

### I. BASIC FACTS AND PROCEDURAL HISTORY

These consolidated appeals arise from disputes over the reasonableness of plaintiff's charges for surgical implant products provided to defendants' insureds, Gavin Powell and Hector Serrano-Ruiz, each of whom were treated at plaintiff hospital after suffering serious injuries in separate and unrelated automobile accidents. At issue is whether defendants were entitled to information pertaining to the cost of the surgical implant products to plaintiff when defendants were determining whether the charges billed to defendants' insureds for those surgical implant products were

"reasonable" under the no-fault act and, accordingly, whether that information was discoverable during the course of litigation over the charges.

Powell was injured on July 2, 2009, when the vehicle he was driving struck a tree. Serrano-Ruiz was injured on July 17, 2009, when the motorcycle he was driving was struck by another vehicle. Both Powell and Serrano-Ruiz suffered broken bones that were treated with surgical implant products, including screws and plates. Plaintiff's charges for the medical treatment afforded to Powell totaled $242,941.09, of which $61,237.50 was for "supply/implant" products; plaintiff's total charges for Serrano-Ruiz's medical treatment were $143,477.76, of which $28,800 was for "supply/implant" products. Auto-Owners is responsible for payment of the insurance benefits for Powell's medical treatment; Home-Owners is responsible for payment of the insurance benefits for Serrano-Ruiz's medical treatment. Plaintiff provided defendants with uniform billing forms, itemized statements, and medical records identifying the medical treatment provided to Powell and Serrano-Ruiz, respectively. Defendants timely paid the portion of plaintiff's bills for all charges other than for the surgical implant products used to treat the two men. Defendants requested invoices showing the cost to plaintiff of those surgical implant products. Plaintiff refused to provide this information. Defendants did not pay the charges within the allotted statutory period, resulting in plaintiff's filing the instant actions to recover the unpaid amounts, together with statutory interest and attorney fees.

Home-Owners admitted that it did not pay the $28,800 charge for surgical implant products and denied that such payment was due and owing on the basis that plaintiff had failed to provide reasonable proof of

the fact and amount of the loss and failed to comply with MCL 500.3158(2) by refusing to provide copies of the invoices showing the cost to plaintiff of the items billed as "supply implants." Home-Owners claimed that, without such information, it was unable to make a determination regarding the reasonableness of the charges for the implants. Similarly, Auto-Owners admitted that it did not pay $61,237.50 for surgical implants because Auto-Owners believed that plaintiff had failed to provide sufficient documentation regarding the cost of treatment as required by MCL 500.3158(2) and failed to provide reasonable proof of the fact and amount of loss as required by MCL 500.3142 by refusing to provide copies of purchase invoices showing the cost to plaintiff of the items billed as "Supply/Implants in the amount of $61,237.50."

Defendants submitted discovery requests seeking information regarding the wholesale cost to plaintiff of the surgical implant products at issue, plaintiff's "total revenue and operating expenses and the 'cost-to-charge ratio' which is derived from these numbers," the percentages of plaintiff's patients that are uninsured or covered by no-fault insurance, the average annual increase in plaintiff's charges over the last five years, and any billing manuals or guidelines used to prepare itemized charges or other billing documents. Plaintiff objected to defendants' discovery requests, arguing that the information sought was irrelevant to the claims asserted in plaintiff's complaints and that defendants were not entitled to the information sought because the information regarding "costs of treatment" to which defendants were entitled under MCL 500.3158(2) pertained to the cost to the "injured person" of the medical care and treatment that person received, i.e., the charges incurred by the patient at plaintiff's hospital.

Defendants later moved to compel discovery, asserting that the information sought was relevant to their determination whether the charges billed were reasonable under the no-fault act. Pursuant to MCL 500.3158(2), plaintiff was required to provide insurers with information relating to the cost of treatment of the injured person, which, defendants argued, included the wholesale cost to the provider of the surgical implant products for which the insured was charged. Defendants also asserted that MCR 2.302 required that plaintiff produce the requested information because the information was relevant to the factual question whether plaintiff's charges for the surgical implant products were "reasonable" within the meaning of the no-fault act. Defendants noted that they paid plaintiff a substantial portion of the total charges billed in each case and that the unpaid portions of plaintiff's bills related solely to charges for the surgical implant products for which defendants sought, and plaintiff refused to provide, underlying cost information. Defendants further asserted that whether plaintiff's charges are "reasonable" and whether plaintiff provided "reasonable proof" of the fact and amount of loss as required by the act are determinations to be made by the finder of fact and were issues to which the requested materials were relevant and discoverable.

Plaintiff opposed defendants' motions, again asserting that defendants were not entitled to the information sought. Plaintiff also moved for summary disposition under MCR 2.116(C)(9) on the basis that defendants had abdicated their duty to process the balance of plaintiff's claims in accordance with the no-fault act and were, instead, seeking to use the discovery process to obtain information that they were not entitled to obtain under the no-fault act: plaintiff's underlying—and often confidential—proprietary-cost data. Plaintiff

asserted that defendants could not merely refuse to process the claims; rather, defendants were required to fully process plaintiff's claims by adopting a method for assessing the reasonableness of those claims. Further, plaintiff argued that the information about the "costs of treatment" that it was required to provide under MCL 500.3158(2) pertained to the cost of treatment to the injured person, not the cost to the provider for providing the treatment.

At the hearing on the motions, defendants reiterated their position that the no-fault act required them to determine whether the charges assessed were reasonable and that MCL 500.3158(2) entitled them to documentation regarding the cost to plaintiff of the surgical implant products in order to make that determination. Defendants argued that by failing to provide that information, plaintiff had not met its burden of providing reasonable proof of loss under the act so as to entitle it to payment for the surgical implant products. In response, plaintiff argued that by submitting a uniform billing form, an itemized statement, and the patient's medical records, it had met its burden in each case to provide defendants with reasonable proof of the amount of the loss under MCL 500.3142 and that, thereafter, defendants failed to evaluate the claims, pay what they believed to be reasonable, and deny what they believed to be excessive. Plaintiff argued that defendants were required to conduct an investigation to determine whether the charges were reasonable by comparing costs among providers "similarly located geographically" for the products at issue. Plaintiff also asserted that allowing insurers to obtain providers' cost data would undermine the goals and objectives of the no-fault act and would cause that reparation system to come to a grinding halt. Plaintiff reiterated that all it is required to do is put the insurer on notice of the charges

and the services provided to the insured and that, once it does so, the insurer then has the obligation to go out and use whatever resources it has at its disposal to evaluate the reasonableness of the charges.

The trial court concluded that the no-fault statute did not require plaintiff to provide its cost of surgical implant products and denied the discovery request. The trial court afforded defendants the opportunity to amend their answers to include allegations that plaintiff's charges were unreasonable. Following the court's ruling, defendants, through their audit consultant, Cor-Vel Corporation, estimated a price at which the surgical implant products had been purchased and, on the basis of those estimates, paid plaintiff $34,701.02 of the outstanding $61,237.50 charges related to Powell's treatment and $21,612.65 of the outstanding $28,800 charges related to Serrano-Ruiz's treatment. The payments were "calculated on a basis of cost of the product to the hospital plus 50%." As a result of the additional payments, the balances remaining in dispute were $26,536.48 for Powell's treatment and $7,187.35 for Serrano-Ruiz's treatment. Defendants amended their answers to plaintiff's complaints accordingly, to specifically deny the reasonableness of the outstanding charges for surgical implant products.

Plaintiff again moved for summary disposition, this time under MCR 2.116(C)(10), asserting that defendants' method for determining whether the charges for the surgical implant products were reasonable was, itself, unreasonable as a matter of law. Plaintiff argued that calculating the reasonable rate of reimbursement on the basis of 1½ times the average wholesale implant cost, provided to defendants by a third-party auditing entity, was itself arbitrary and unreasonable as a matter of law under this Court's decision in *Advocacy Org for*

*Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 370; 670 NW2d 569 (2003) (*AOPP*), aff'd 472 Mich 91 (2005). Plaintiff described defendants' method as mere guesswork. As it had previously, plaintiff argued that the only relevant consideration under the no-fault act is the amount of the provider's charges for medical services, and not the provider's cost of providing those services. The trial court granted plaintiff's motion for summary disposition, including penalty interest, but denied plaintiff's request for attorney fees because defendants' legal position was "based primarily on testing the legal waters, as opposed to testing the patience of this Court or the Plaintiff." Defendants now appeal as of right. Plaintiff cross-appeals that portion of the order that denied its request for attorney fees.

## II. STANDARDS OF REVIEW

This Court reviews for an abuse of discretion a trial court's ruling on a motion to compel discovery. *Cabrera v Ekema*, 265 Mich App 402, 406; 695 NW2d 78 (2005).

We review de novo a trial court's decision on a motion for summary disposition, reviewing the record in the same manner as must the trial court to determine whether the movant was entitled to judgment as a matter of law. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). The moving party must specifically identify the matters that have no disputed factual issues, and it has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. MCR 2.116(G)(3)(b); MCR 2.116(G)(4); *Coblentz v City of Novi*, 475 Mich 558, 569; 719 NW2d 73 (2006). The

party opposing the motion then has the burden of showing by evidentiary materials that a genuine issue of disputed material fact exists. MCR 2.116(G)(4); *Coblentz*, 475 Mich at 569. The existence of a disputed fact must be established by substantively admissible evidence, although the evidence need not be in admissible form. MCR 2.116(G)(6); *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999). A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

We review de novo questions of statutory construction. *Feyz v Mercy Mem Hosp*, 475 Mich 663, 672; 719 NW2d 1 (2006). This Court's primary task in construing a statute is to discern and give effect to the intent of the Legislature. *Shinholster v Annapolis Hosp*, 471 Mich 540, 548–549; 685 NW2d 275 (2004). In so doing, the Court must begin with the language of the statute, ascertaining the intent that may reasonably be inferred from its language. *Lash v Traverse City*, 479 Mich 180, 187; 735 NW2d 628 (2007). It is axiomatic that the words contained in the statute provide the most reliable evidence of the Legislature's intent. *Kinder Morgan Mich, LLC v City of Jackson*, 277 Mich App 159, 163; 744 NW2d 184 (2007). The Legislature is presumed to have intended the meaning it plainly expressed, and clear statutory language must be enforced as written. *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 219; 731 NW2d 41 (2007); *Fluor Enterprises, Inc v Dep't of Treasury*, 477 Mich 170, 174; 730 NW2d 722 (2007). If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. *Lash*, 479 Mich at 187; *Rose Hill Ctr, Inc v Holly Twp*, 224 Mich

App 28, 32; 568 NW2d 332 (1997). Only if a statute is ambiguous is judicial construction permitted. *Detroit City Council v Detroit Mayor*, 283 Mich App 442, 449; 770 NW2d 117 (2009).

Finally, we review for an abuse of discretion a trial court's decision whether to award attorney fees under the no-fault act. *Moore v Secura Ins*, 482 Mich 507, 516; 759 NW2d 833 (2008). An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). "The trial court's decision about whether the insurer acted reasonably involves a mixed question of law and fact. What constitutes reasonableness is a question of law, but whether [a] defendant's denial of benefits is reasonable under the particular facts of the case is a question of fact." *Ross v Auto Club Group*, 481 Mich 1, 7; 748 NW2d 552 (2008). This Court reviews a trial court's factual findings for clear error. *Id.* A decision is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.*

III. ANALYSIS

A. IS THE COST OF PROVIDING MEDICAL SERVICES AND PRODUCTS DISCOVERABLE UNDER MCL 500.3158(2), MCL 500.3159, AND MCR 2.302?

The primary issue on appeal is whether defendants are permitted by the no-fault act to discover the wholesale cost to plaintiff of surgical implant products used in treating defendants' insureds when determining whether plaintiff's charges for those surgical implant products are reasonable under the act. We conclude that, in accordance with defendants' clear statutory right and obligation to question the reasonableness of the charges, the no-fault act permits defendants to

discover the wholesale cost to plaintiff of the surgical implant products for which the insureds were charged. We also stress that the ultimate burden of proof regarding the reasonableness of the charges rests with the provider.

The Michigan court rules establish " 'an open, broad discovery policy . . . .' " *Cabrera*, 265 Mich App at 407 (citation omitted); MCR 2.302. Discovery is permitted for any relevant matter, unless privileged. *Cabrera*, 265 Mich App at 407. However, "a trial court should also protect the interests of the party opposing discovery so as not to subject that party to excessive, abusive, or irrelevant discovery requests." *Id.*

The no-fault act provides for a system of mandatory no-fault automobile insurance, which requires Michigan drivers to purchase personal protection insurance. MCL 500.3101 *et seq*. "Under personal protection insurance[,] an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of [chapter 31 of the Insurance Code]." MCL 500.3105(1). MCL 500.3107(1)(a) provides that personal protection insurance benefits are payable for "[a]llowable expenses consisting of all *reasonable charges* incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." (Emphasis added.) Though "reasonable" is not defined, MCL 500.3157 instructs:

> A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, *may charge a reasonable amount for the products, services and accommodations rendered*. The charge shall not exceed the

amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance. [Emphasis added.]

MCL 500.3158(2) further requires that

[a] physician, hospital, clinic or other medical institution providing, before or after an accidental bodily injury upon which a claim for personal protection insurance benefits is based, any product, service or accommodation in relation to that or any other injury, or in relation to a condition claimed to be connected with that or any other injury, if requested to do so by the insurer against whom the claim has been made, (a) *shall furnish forthwith a written report of the* history, condition, treatment and dates and *costs of treatment of the injured person* and (b) shall produce forthwith and permit inspection and copying of its records regarding the history, condition, treatment and dates and costs of treatment. [Emphasis added.]

Finally, MCL 500.3159 provides:

In a *dispute regarding an insurer's right to discovery of facts about an injured person's* earnings or about his history, condition, treatment and dates and *costs of treatment,* a court may enter an order for the discovery. The order may be made only on motion for good cause shown and upon notice to all persons having an interest, and shall specify the time, place, manner, conditions and scope of the discovery. A court, in order to protect against annoyance, embarrassment or oppression, as justice requires, may enter an order refusing discovery or specifying conditions of discovery and may order payments of costs and expenses of the proceeding, including reasonable fees for the appearance of attorneys at the proceedings, as justice requires. [Emphasis added.]

Because benefits are payable as losses accrue, benefits are considered overdue "if not paid within 30 days after *an insurer receives reasonable proof of the fact and of the amount of loss sustained.*" MCL 500.3142(2) (emphasis added). Similarly, "if the court finds that the insurer

unreasonably refused to pay the claim or unreasonably delayed in making proper payment," attorney fees shall be a charged against the insurer in addition to the benefits recovered. MCL 500.3148(1).

Defendants argue that the cost to the providers of the products used in treating an insured is an appropriate consideration in determining whether the charge for those products is reasonable and that the trial court erred by construing the phrase "costs of treatment" in MCL 500.3158(2) as referring only to the charges of the health-care providers in their own billing to the patients and not to documentation of the cost to the providers of the products and materials used in that treatment.

In contrast, plaintiff argues that the cost of the surgical implant products, whether actual or estimated, was not a permissible consideration in determining whether plaintiff's charges were reasonable and that defendants' method is equivalent to a fee schedule, which is not authorized under the act; rather, the act contemplates only a "charge-to-charge" comparison. Plaintiff believes that defendants were limited to comparing plaintiff's charges to those of other similar providers of the same services.

The trial court concluded that defendants were not permitted to consider either plaintiff's cost for the surgical implant products or the average cost of those products to providers generally, as calculated by a third-party auditor. Instead, defendants were restricted to comparing plaintiff's charges with the charges of other similar providers of these products. We believe the trial court erred by so concluding.

Both parties rely on our holding in *AOPP*, 257 Mich App 365. At issue in that case was

whether, under the language of the [no-fault] act, defendant insurance companies are required to pay the full amount charged as long as the charge constitutes a "customary" one, or if defendants are entitled to independently review and audit the medical costs charged to their insureds to determine whether a particular charge is "reasonable." [*AOPP*, 257 Mich App at 372.]

Citing both MCL 500.3157 and MCL 500.3107, we noted that the amount an insurer is obligated to pay to a health-care provider is limited to "a reasonable amount." *AOPP*, 257 Mich App at 374. We held:

Under this statutory scheme, an insurer is not liable for any medical expense that is not both reasonable and necessary. *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 93-94; 535 NW2d 529 (1995), quoting *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 49-50; 457 NW2d 637 (1990). The reasonableness of the charge is an explicit and necessary element of a claimant's recovery against an insurer, and, accordingly, the burden of proof on this issue lies with the plaintiff. *Id.* "Where a plaintiff is unable to show that a particular, reasonable expense has been incurred for a reasonably necessary product and service, there can be no finding of a breach of the insurer's duty to pay that expense, and thus no finding of liability with regard to that expense." *Nasser*, [435 Mich] at 50.

As the United States Court of Appeals for the Sixth Circuit recognized, these statutory provisions leave open the questions of (1) what constitutes a reasonable charge, (2) who decides what is a reasonable charge, and (3) what criteria may be used to determine what is reasonable. See *Advocacy Organization for Patients & Providers (AOPP) v Auto Club Ins Ass'n*, 176 F3d 315, 320 (CA 6, 1999). [*Id.* at 374-375.]

We rejected the provider's claim that insurers must pay all reasonable necessary medical expenses incurred for accidental bodily injuries as long as the charges did not exceed the amount the provider customarily charged for

comparable services to patients *without* insurance. *Id.*
at 375. While MCL 500.3157 specifically sets forth that
a provider's charge "shall not exceed the amount the
person or institution customarily charges for like prod-
ucts, services and accommodations in cases not involv-
ing insurance," the language of the statute did not
define what was "reasonable"; rather, the language
simply placed a maximum on what a provider could
charge in no-fault cases. "Thus, although § 3157 limits
what can be charged, nowhere in that section does the
Legislature indicate that a 'customary' charge is neces-
sarily a 'reasonable' charge that must be reimbursed in
full by the insurer." *AOPP*, 257 Mich App at 376
(emphasis omitted). Such a finding would be contrary to
the purpose of the no-fault act. We noted:

> In fact, this Court in *McGill* [*v Auto Ass'n of Mich*, 207
> Mich App 402; 526 NW2d 12 (1994)] discussed at length the
> policy considerations underlying the act in rejecting the
> plaintiffs' argument that the defendant insurers were
> required to pay the full amount of medical expenses billed
> by health-care providers:
>
> "It is to be recalled that the public policy of this state is
> that 'the existence of no-fault insurance shall not increase
> the cost of health care.' Indeed, '[t]he no-fault act was as
> concerned with the rising cost of health care as it was with
> providing an efficient system of automobile insurance.' To
> that end, the plain and ordinary language of § 3107 requir-
> ing no-fault insurance carriers to pay no more than rea-
> sonable medical expenses, clearly evinces the Legislature's
> intent to 'place a check on health care providers who have
> "no incentive to keep the doctor bill at a minimum." '
>
> "For the above reasons, we reject plaintiffs' argument
> that, pursuant to the no-fault act, defendants are obligated
> to pay the entire amount of plaintiffs' medical bills. *Such
> an interpretation would require insurance companies to
> accept health care providers' unilateral decisions regarding
> what constitutes reasonable medical expenses, effectively*

*eliminating insurance companies' cost-policing function as contemplated by the no-fault act. This result would directly conflict with the Legislature's purpose in enacting the no-fault system in general and § 3107 in particular. '[I]t is clear that the Legislature did not intend for no-fault insurers to pay all claims submitted without reviewing the claims for lack of coverage, excessiveness, or fraud.' "* [*Id.* at 407-408 (citations omitted; emphasis added).] [*AOPP*, 257 Mich App at 377-378.]

Thus, insurers are *required* to challenge the reasonableness of charges, and providers should expect no less. *Id.* at 378-379.

In concluding that insurers were only obligated to pay benefits for reasonable charges, we acknowledged that what was "reasonable" had yet to be defined. "[C]onsequently, insurers must determine in each instance whether a charge is reasonable in light of the service or product provided." *Id.* at 379. Ultimately, the determination of what is a reasonable charge is for the trier of fact. *Id.* In a footnote, we acknowledged that the case had policy ramifications, but that those should not be overstated:

> We believe both sides overstate the effects of either side prevailing. Under the statute, plaintiffs necessarily make the initial determination of reasonableness by charging the insured for the services. Once plaintiffs charge the insured, the insurer then makes its own determination regarding what is reasonable and pays that amount to plaintiffs. Although, as plaintiffs argue, the cost-benefit analysis may cause fewer legal actions over the disputed amount, the fact-finder will ultimately decide what is reasonable. Whether this procedure is the best is a matter for the Legislature. [*Id.* at 379 n 4 (citations omitted).]

Naturally, "[p]laintiffs may challenge defendants' failure to fully reimburse them for medical bills as a violation of the act, but they have the burden of

establishing the reasonableness of the charges in order
to impose liability on the insurer," and "[t]he question
whether expenses are reasonable and reasonably neces-
sary is generally one of fact for the jury . . . ." *Id.* at 380.
Thus, "[i]f plaintiffs disagree with a defendant's assess-
ment of reasonableness, they have the right to contest
the amount of such payment and must prove by a
preponderance of the evidence that the expenses were
both reasonable and necessary." *Id.*[1]

While *AOPP* supports an insurer's practice of deter-
mining the reasonableness of a provider's charges for
surgical implant products by comparing those charges
to the amounts charged for those products by other,
similar providers, *AOPP* does not suggest that this is
the *only* permissible approach under the act. In *AOPP*,
we specifically declined to "delineate the permissible
factors" that defendants may consider when determin-
ing whether a charge is reasonable, while specifically
rejecting the notion that providers are permitted to
"unilaterally determine the 'reasonable' charge to be
paid by the insurer" by way of their customary charges
or that the act should be interpreted in a manner that
effectively eliminates the cost-policing function of in-
surance companies as contemplated by the no-fault act.
*Id.* at 377, 379. To limit assessing the reasonableness of
provider charges solely to a comparison of such charges
among similar providers would be to leave the determi-

---

[1] Following our decision in *AOPP*, our Supreme Court granted the
providers' application for leave to appeal, directing that "defendants are
to explain in detail the computations they use in determining whether a
particular charge meets the '80th percentile test.'" *Advocacy Org for
Patients & Providers v Auto Club Ins Ass'n*, 470 Mich 881 (2004).
Thereafter, the Supreme Court affirmed the case in a memorandum
opinion and concurring opinions for the reason that "we agree with the
Court of Appeals resolution of this issue . . . ." *Advocacy Org for Patients
& Providers v Auto Club Ins Ass'n*, 472 Mich 91, 95; 693 NW2d 358
(2005).

nation of reasonableness solely in the hands of providers, as a collective group, and would abrogate the cost-policing function of no-fault insurers, contrary to the intention of the Legislature. Accordingly, defendants' ability to assess the reasonableness of provider charges is not limited to a comparison of customary charges among similar providers. Rather, the act contemplates that, as happened here, insurers will assess the reasonableness of a provider's charges, paying that portion deemed reasonable, with the provider having the prerogative to then challenge the insurer's decision not to pay the entire charge submitted by filing suit. Once an action is filed, the provider has the burden of proving by a preponderance of the evidence the reasonableness of its charges. *Id.* at 379-380. The parties are free to introduce evidence to the fact-finder regarding the reasonableness of plaintiff's charges. Plaintiff is free to argue that its charges are in line with those of other similar providers for the surgical implant products at issue here, and defendants may respond by asserting that plaintiff's markup over the average wholesale cost of those products renders the charges excessive. But ultimately, the burden of proof is on the provider to show how and why the charges are reasonable.

In keeping with the insurer's obligation to determine the reasonableness of a provider's charges, we believe that defendants were entitled to discover the wholesale cost of the surgical implant products for which the insureds were charged. The no-fault act, MCL 500.3158(2), permits defendants to discover plaintiff's "costs of treatment *of* the injured person," not the "costs of treatment *to* the injured person," which presumably are plaintiff's customary charges. (Emphasis added.) Accordingly, defendants are permitted to consider the cost *to plaintiff* of providing that treatment

and not merely the cost of treatment as billed by the provider to the injured person when evaluating the reasonableness of the charges submitted for payment. We recognize that permitting insurers access to a provider's cost information could open the door to nearly unlimited inquiry into the business operations of a provider, including into such concerns as employee wages and benefits. However, we explicitly limit our ruling to the sort of durable medical-supply products at issue here, which are billed separately and distinctly from other treatment services and which defendants represent (and plaintiff has not disputed) require little or no handling or storage by a provider. The surgical implant products here are standalone items that can be easily quantified. Plaintiff must come forward with evidence to convince a jury that the charges for the durable medical equipment were reasonable.

We find further support in our recent opinion in *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651; 819 NW2d 28 (2011). At issue in that case was the reasonable rate for family-provided attendant-care services under MCL 500.3107(1)(a). The plaintiff believed that agency rates constituted a material and probative measure of the general value of attendant-care services, whereas the insurance company claimed that agency rates were irrelevant to establish the reasonable rate for care provided by an unlicensed family member. Instead, the insurance company argued, the reasonable rate should have been based on a similar worker's wage, which would not include an agency's overhead and additional expenses not related to the worker's wages. *Hardrick*, 294 Mich App at 664-665. We held that, while rates charged by an agency to provide attendant-care services were not *dispositive* of the reasonable rate chargeable by a relative caregiver, they were certainly a relevant consideration for the jury in deciding what was

a "reasonable rate." *Id.* at 666. Concluding that the trial court properly rejected the insurance company's attempt to exclude the evidence, we explained:

> Here, the question presented is not whether an agency rate is reasonable per se under the circumstances, but whether evidence of an agency rate may assist a jury in determining a reasonable charge for family-provided attendant-care services. The fact that an agency charges a certain rate for precisely the same services that [the] parents provide does not *prove* that the rate should apply to the parents' services. However, an agency rate for attendant-care services, routinely paid by a no-fault carrier, is a piece of evidence that throws some light, however faint, on the reasonableness of a charge for attendant-care services. In other words, an agency rate supplies one measure of the value of attendant care and is worthy of a jury's consideration. A jury may ultimately decide that an agency rate carries less weight than the rate charged by an independent contractor, or no weight at all. But the fact that different charges for the same service exist in the marketplace hardly renders one charge irrelevant as a matter of law. [*Id.* at 669 (citation omitted).]

Similarly, in this case, plaintiff's actual cost for surgical implant products is but one piece of information that a jury might find relevant in determining whether plaintiff's charges were reasonable. *Hardrick* stresses what we have already discussed at length—the jury is charged with the responsibility of determining the reasonableness of plaintiff's charges. Because actual costs to plaintiff would most certainly "throw some light on" the reasonableness of the charges, the trial court should have compelled plaintiff to provide the information.

*Hardrick* also confirms the notion that a hospital's itemized bills and records do not, standing alone, satisfy the "reasonableness" requirement. We analogized a "charge" to an attorney's bill for services. When an

attorney seeks a court order for payment of a "reason-
able attorney fee," he or she may not simply provide a
bill, but must also demonstrate that the bill is reason-
able by showing more than his or her actual "wage." *Id.*
at 673-674. We explained:

> Given that many factors influence the determination of
> a "reasonable charge" for attendant-care services, a jury
> may consider a provider's wage as one piece of evidence
> relevant to this calculation. We view the reasonableness
> inquiry as encompassing any evidence bearing on fair
> compensation for the particular services rendered. The
> principles supporting the relevancy of agency rates equally
> support the relevancy of other evidence. For example, [the
> expert witness] testified that an agency would pay its
> employees less than the $25 to $45 hourly rate charged to
> the patient. Evidence of the employee's hourly wage throws
> some light, however faint [,] on the reasonableness of a
> charge for attendant-care services. [The insurance com-
> pany] correctly notes that the jury should hear such
> evidence to more fully and accurately calculate a reason-
> able rate for the services rendered.

> \* \* \*

> . . . Limiting a family member's "reasonable charge" to
> a wage ignores . . . other costs. In the end, the Legislature
> commanded that no-fault insurers pay a "reasonable
> charge" for attendant-care services, thereby consigning to
> a jury the necessary economic-value choices.

> \* \* \*

> None of the evidence proffered by [either party], or even
> mentioned by this Court, is *dispositive* of the reasonable-
> charge issue. Rather, the evidence provides a collage of
> factors affecting the reasonable rate that may be charged
> by [the] parents for the services they provide. [*Id.* at
> 675-678 (citation omitted).]

Similarly, plaintiff's actual cost for the surgical implant products is not dispositive on the issue whether its charges were reasonable; however, the actual cost of the durable medical equipment is certainly a piece of the overall "collage of factors affecting the reasonable rate" of plaintiff's charges. Again, it cannot be overstated that, when factually disputed, the reasonableness of the charges is a question of fact for the jury to determine. The jury can only make such a determination if it has been provided with all relevant and probative evidence.

Accordingly, given our conclusion that defendants were entitled to discover the actual cost of the surgical implant products to plaintiff under MCL 500.3158 and MCL 500.3159, the trial court erred when it denied defendants' motion to compel discovery. Because of the error, it follows that summary disposition in plaintiff's favor was prematurely and improvidently granted, as discussed hereinafter.

### B. DID THE TRIAL COURT ERR BY GRANTING PLAINTIFF SUMMARY DISPOSITION?

Defendants argue that, considering the cost data presented by defendants, which is a permissible consideration under the no-fault act in determining reasonableness, and considering plaintiff's lack of admissible evidence supporting the reasonableness of its charges, a rational fact-finder could conclude that plaintiff's charges for surgical implant products were not reasonable and, therefore, summary disposition in plaintiff's favor was not warranted. We agree.

Plaintiff sought summary disposition on the basis that defendants' method of determining that plaintiff's charges for the surgical implant products were excessive was arbitrary and unreasonable. Plaintiff did not proffer anything to support its assertion that its

charges were reasonable, nor did it offer any evidence regarding how its charges compared with those of similar providers of the same products. Instead, plaintiff claimed that when it established and submitted its charges to defendants it necessarily made the determination regarding the reasonableness of those charges, thus shifting the burden to defendants to employ a reasonable method to challenge the validity of plaintiff's charges. Thus, plaintiff argued, defendants had the burden of legitimately auditing plaintiff's charges under the no-fault act and, when they failed to do so, they failed to create a triable issue for the jury. We disagree.

Plaintiff's position is at odds with established caselaw. The burden of proof on the reasonableness of its fees lies with plaintiff. *Hofmann*, 211 Mich App at 93-94, quoting *Nasser*, 435 Mich at 49-50. "[I]t is the insurance company that has the right to deny a claim (or part of a claim) for unreasonableness under § 3107. The *insured* then has the burden to prove that the charges are in fact reasonable." *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 18; 795 NW2d 101 (2009). Moreover, as the moving party, plaintiff bore the burden of establishing the absence of any genuine issue of material fact in the first instance. MCR 2.116(G)(4); *Coblentz*, 475 Mich at 569. Plaintiff had to provide the trial court with some basis for concluding that its charges were reasonable and that there was no factual issue for trial, despite defendants' arguments otherwise. Plaintiff wholly failed to do this. Considering that this Court has explicitly held that a provider's customary charges are not necessarily reasonable, *AOPP*, 257 Mich App at 377, the mere fact that plaintiff believed its charges to be reasonable does not make it so. Accordingly, there was no basis for the trial court to conclude

that plaintiff's charges were necessarily reasonable under the no-fault act. Hence, summary disposition was improvidently granted.

### C. DID THE TRIAL COURT ERR BY REFUSING TO AWARD ATTORNEY FEES UNDER MCL 500.3148?

In its cross-appeal, plaintiff argues that the trial court clearly erred by failing to award plaintiff its attorney fees after defendants refused to pay for the surgical implant products. We disagree.

The no-fault act provides for an award of reasonable attorney fees when an insurer unreasonably withholds benefits. MCL 500.3148(1). Our Supreme Court has held:

> MCL 500.3148(1) establishes two prerequisites for the award of attorney fees. First, the benefits must be overdue, meaning "not paid within 30 days after [the] insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). Second, in postjudgment proceedings, the trial court must find that the insurer "unreasonably refused to pay the claim or unreasonably delayed in making proper payment." MCL 500.3148(1). Therefore, assigning the words in MCL 500.3142 and MCL 500.3148 their common and ordinary meaning, "attorney fees are payable only on overdue benefits for which the insurer has unreasonably refused to pay or unreasonably delayed in paying." *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476, 485; 673 NW2d 739 (2003) (emphasis omitted). [*Moore*, 482 Mich at 517.]

"The purpose of the no-fault act's attorney-fee penalty provision is to ensure prompt payment to the insured." *Ross v Auto Club Group*, 481 Mich 1, 11; 748 NW2d 552 (2008). Therefore, when an insurer refuses or delays payment of personal protection insurance benefits, it has the burden of justifying its refusal or delay under MCL 500.3148(1). *Ross*, 481 Mich at 11.

When benefits initially denied or delayed are later determined to be payable, "a rebuttable presumption arises that places the burden on the insurer to justify the refusal or delay." *Attard v Citizens Ins Co of America*, 237 Mich App 311, 317; 602 NW2d 633 (1999). However, a refusal to pay or a delay in payment "is not unreasonable if it is based on a legitimate question of statutory construction, constitutional law, or factual uncertainty." *Id.* The determinative factor "is not whether the insurer ultimately is held responsible for benefits, but whether its initial refusal to pay was unreasonable." *Ross*, 481 Mich at 11.

Defendants asserted in the trial court, as they do here, that the refusal to pay the full amount of plaintiff's charges for surgical implant products was based on both a legitimate question of statutory construction and factual uncertainty regarding the reasonableness of those charges. The trial court determined that defendants' conduct was based on a legitimate question of statutory construction. We agree and conclude that the trial court did not abuse its discretion by declining to award plaintiff attorney fees.

As discussed earlier in this opinion, an insurer is not foreclosed from assessing the reasonableness of a provider's charges merely because those charges are the provider's customary charges; rather, insurers have a duty under the act to " 'audit and challenge the reasonableness' " of charges submitted for payment. *AOPP*, 257 Mich App at 378, quoting *LaMothe v Auto Club Ins Ass'n*, 214 Mich App 577, 582 n 3; 543 NW2d 42 (1995). Thus, defendants were required to assess the reasonableness of plaintiff's charges for surgical implant products. In *AOPP*, this Court found it unnecessary to "delineate the permissible factors for determining what is 'reasonable' . . . ." *AOPP*, 257 Mich App at 379.

Consequently, at the time defendants received plain-
tiff's billings, the permissible factors available for de-
fendants' consideration in evaluating the reasonable-
ness of the charges for surgical implant products
submitted by plaintiff remained undefined by either the
no-fault act or the caselaw interpreting and construing
it. Defendants requested that plaintiff provide informa-
tion regarding the wholesale cost of these durable
medical products for consideration in determining
whether plaintiff's charges to defendants' insureds for
those products were reasonable. Considering that MCL
500.3158(2) requires that, upon defendants' request,
plaintiff provide defendants with "a written report of
the . . . costs of treatment of the injured person" and
that plaintiffs "produce forthwith and permit inspec-
tion and copying of its records regarding . . . costs of
treatment," and considering further a complete absence
of caselaw construing this phrase, the trial court did not
clearly err by concluding that defendants' denial of full
payment was premised on a legitimate question of
statutory construction. "[A]n insurer's initial refusal to
pay benefits under Michigan's no-fault insurance stat-
utes can be deemed reasonable even though it is later
determined that the insurer was required to pay those
benefits." *Moore*, 482 Mich at 525. Even if it is later
established that defendants are obligated to pay the full
amount of plaintiff's charges, we believe that defen-
dants' actions thus far in paying only the undisputed
portions of the bills were reasonable under the circum-
stances and that the attorney-fee penalty provision of
the no-fault act was not triggered.

Because we conclude that the no-fault act permits
defendants to discover the wholesale cost to plaintiff of
the surgical implant products for which the insureds
were charged, we reverse that portion of the trial court's
order that granted plaintiff summary disposition, af-

firm that portion of the trial court's order that denied plaintiff's request for attorneys fees, and remand for further proceedings. We do not retain jurisdiction.

HOEKSTRA, P.J., and K. F. KELLY and BECKERING, JJ., concurred.