*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GOLDEN GIBSON,

        Plaintiff-Appellant,

v

THOMAS H. BLASKE, JOHN F. TURCK IV, and
BLASKE & BLASKE, PLC,

        Defendants-Appellees.

UNPUBLISHED
April 14, 2026
10:30 AM

No. 374686
Jackson Circuit Court
LC No. 2024-002004-NM

Before: O'BRIEN, P.J., and FEENEY and WALLACE, JJ.

PER CURIAM.

In this legal-malpractice action, plaintiff-appellant, Golden Gibson, appeals as of right the trial court judgment granting summary disposition in favor of defendants-appellees, Thomas H. Blaske, John F. Turck IV, and Blaske & Blaske, PLC. We affirm.

## I. FACTS

This case involves a layered history. First, in 2015, plaintiff hired Gregory Wagoner of Shumaker, Loop & Kendrick, LLP (Shumaker) to initiate a lawsuit against the parties that sold plaintiff a scrapyard, alleging that the sellers failed to disclose drums of toxic matter buried on the property. During those proceedings, plaintiff hired PM Environmental, LLC (PM), who performed an above-ground survey using ground penetrating radar (GPR) and reported that its findings were consistent with the presence of buried barrels. A jury rejected plaintiff's fraud claims, and this Court affirmed.[1] Next, plaintiff hired defendants to initiate a legal malpractice action against Wagoner and Shumaker, faulting Shumaker for not having PM dig for the presence of barrels. During those proceedings, plaintiff authorized PM to dig for barrels, and PM found none. That case settled. In the present case, plaintiff initiated a legal malpractice action against defendants, faulting defendants for not suing PM before the statutory limitation period ran. The trial court

---

[1] *Gibson v Danilowicz Estate*, unpublished per curiam opinion of the Court of Appeals, issued February 14, 2019 (Docket No. 341579).

granted defendants' motion for summary disposition under MCR 2.116(C)(10), finding that plaintiff's claims failed for two reasons: (1) the parties' retainer agreement limited defendants' scope of representation to a legal malpractice claim and nothing more, and (2) plaintiff did not have a claim against PM because he could not establish causation. Plaintiff now appeals.

## II. SUMMARY DISPOSITION

On appeal, plaintiff argues that the trial court erred by granting summary disposition because: (1) a material question of fact remained regarding defendants' scope of legal representation, and (2) plaintiff demonstrated a viable claim against PM. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Because both issues were raised, addressed, and decided by the trial court through defendants' motion for summary disposition, they are preserved for appellate review.[2] See *George v Allstate Ins Co*, 329 Mich App 448, 453; 942 NW2d 628 (2019).

"We review de novo a trial court's decision on a motion for summary disposition, reviewing the record in the same manner as must the trial court to determine whether the movant was entitled to judgment as a matter of law." *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012). Our review is limited to the evidence that was presented to the trial court at the time the motion was decided. *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475-476; 776 NW2d 398 (2009). "To the extent this matter presents questions concerning the proper interpretation of contractual or statutory language, our review is

---

[2] On appeal, plaintiff briefly argues that defendants waived their limited-scope-of-representation affirmative defense by failing to raise it in their responsive pleading, pursuant to MCR 2.111(F)(3). This argument lacks merit.

MCR 2.111(F)(3) states that "[a]ffirmative defenses must be stated in a party's responsive pleading, either as originally filed or as amended in accordance with MCR 2.118." MCR 2.111(F)(3) further states that the facts constituting an affirmative defense must be stated under a "separate and distinct heading . . . ." In this case, defendants twice raised their limited-scope-of-representation argument in their answer to plaintiff's complaint—defendants admitted that "they were retained with respect to a cause of action against Gregory Wagoner and Shumaker," but they denied "that any representation existed as to claims against P.M. . . ." Although this statement was raised in defendants' "answer" section, it was not raised in the separate and distinct "affirmative defense section," pursuant to MCR 2.111(F)(3). Nonetheless, MCR 2.118(C)(1) states that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they are treated as if they had been raised by the pleadings." Accordingly, because the parties addressed defendants' limited-scope-of-representation defense in their filings concerning defendants' motion for summary disposition, that defense was clearly tried by the express or implied consent of the parties, and we will treat it as if it had been properly raised in the pleadings. See MCR 2.118(C)(1).

also de novo." *Dobbelaere v Auto-Owners Ins Co*, 275 Mich App 527, 529; 740 NW2d 503 (2007).

MCR 2.116(C)(10) provides that the trial court may grant summary disposition in favor of the moving party when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "In reviewing a motion brought under MCR 2.116(C)(10), we review the evidence submitted by the parties in a light most favorable to the nonmoving party to determine whether there is a genuine issue regarding any material fact." *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). "A genuine issue of material fact exists when the record leaves open an issue on which reasonable minds could differ." *Id*. at 270-271 (quotation marks and citation omitted). "A trial court may not assess credibility, weigh the evidence, or resolve factual disputes, and when material evidence conflicts, it is not appropriate for the court to grant the motion for summary disposition." *Cetera v Mileto*, 342 Mich App 441, 448; 995 NW2d 838 (2022).

## B. GOVERNING LAW

"The plaintiff in a legal malpractice claim must prove four elements: (1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was the proximate cause of an injury; and (4) the fact and extent of the injury alleged." *Patel v FisherBroyles, LLP*, 344 Mich App 264, 272; 1 NW3d 308 (2022) (quotation marks and citation omitted). "The first element correlates with the duty element of a traditional negligence claim because the existence of the attorney-client relationship gives rise to a duty as a matter of law." *Id*. "The second element requires proof that the defendant breached a professional standard of care." *Id*. at 273. "[T]he third element requires the plaintiff to prove that the defendant's action was a cause in fact of the claimed injury." *Id*. (quotation marks and citation omitted). "To do so, the plaintiff must demonstrate that he or she would have been successful in the underlying matter but for the attorney's malpractice." *Id*. "In other words, the client seeking recovery from his attorney is faced with the difficult task of proving two cases within a single proceeding." *Id*. (quotation marks and citation omitted).

## 1. SCOPE OF REPRESENTATION

Plaintiff first challenges the trial court's finding that defendants' "scope of representation was quite clearly limited to the pursuit of a legal malpractice claim against the Shumaker firm." Plaintiff argues that a material question of fact regarding defendants' scope of legal representation remained because there was no limitation set forth in the retainer agreement, and even if there were, when defendants' "advice and services exceeded the agreed scope of representation it created an attorney-client relationship between Defendants and [plaintiff] for that purpose." We disagree.

This Court has held that "when an attorney and a client expressly limit terms of the attorney's representation, the duty imposed on the attorney for purposes of a legal malpractice action is limited to the agreed-upon scope of representation." *Id*. at 276. "A fee [or retainer] agreement between an attorney and a client is a contract. Therefore, a fee or retainer agreement is . . . subject to the law of contracts." *Wasenko v Auto Club Group*, 347 Mich App 635, 639-640; 16 NW3d 557 (2023) (quotation marks and citations omitted). "Accordingly, an attorney and a

client are free to contract as they see fit, and courts must enforce contracts as written unless they are in violation of law or public policy." *Id*. at 640 (quotation marks and citation omitted).

In this case, the parties' retainer agreement stated the following:

## CONTINGENT FEE AGREEMENT

The undersigned CLIENT hereby retains Blaske and Blaske, P.L.C. ATTORNEY, to represent CLIENT in connection with claims for injuries and/or damages arising out of an incident, accident, or event of _____*legal malpractice*_____ which occurred on or about *Gibson v Estate of Walter and Virginia Danilowicz*

As written, this contract clearly limits defendants' scope of representation to claims "arising out of an incident, accident, or event of *legal malpractice*" in the first case. (Emphasis added.) "It is a general rule of grammar . . . that a modifying word or clause is confined solely to the last antecedent, unless a contrary intention appears." *Sun Valley Foods Co v Ward*, 460 Mich 230, 238; 596 NW2d 119 (1999). Here, the parties modified a general retainer agreement to purposefully limit defendants' representation to claims of legal malpractice in the first case. Therefore, the trial court did not err by finding that defendants' "scope of representation was quite clearly limited to the pursuit of a legal malpractice claim against the Shumaker firm." See *Patel*, 344 Mich App at 276.

Plaintiff alternatively argues that even if the retainer agreement limited the scope of defendants' representation to legal malpractice claims, defendants expanded their scope of representation by providing advice and services regarding PM. Plaintiff's argument is premised on the idea that defendants were aware that in the first case, Shumaker and PM colluded to ensure that plaintiff pursued a meritless case so that Shumaker could obtain legal fees from plaintiff. This argument lacks merit.

Plaintiff broadly asserts that "[d]efendants worked on the claim against PM, as evidenced by their own notes." The only notes that plaintiff expressly draws attention to on appeal are the following excerpts from two of defendants' personal meeting notes:

> THB [presumably Thomas H. Blaske] explained how this is not a legal mal case where the underlying case was meritorious and D [Shumaker] botched it, but rather a case that never should have been brought in the first place, and the only people who had anything to gain were Ds [Shumaker].

> \* \* \*

> We talked about moving forward with the case as a "no-case scenario" where Mr. Gibson paid $160k litigating a case that should never have been brought in the first place. Mr. Gibson said that Mark Mercer, a senior partner at the Defendant law firm, told him that he had PM "in his pocket" and that they will find barrels. I searched Mark Mercer online, and found that he is an attorney at the Defendant law firm, and is part of their environmental litigation department.

-4-

The only assertion of PM's alleged bad acts within these notes is plaintiff's own statement. Accordingly, there is no admissible evidence of the collusive scheme that plaintiff is alleging, and there is no indication that defendants ever believed the collusion-scheme that plaintiff presented to them. These notes simply stated that defendants' strategy was to attack Shumaker's decision to pursue this case at all as it simply had no merit, as evidenced by the lack of barrels found under the property.

Upon further investigation, defendants' March 2019 notes—following a meeting with plaintiff—clearly indicated that "the only potentially timely case we see here is against attorney Wagoner for badly mishandling the case." Defendants then outlined nine things that they "wanted to explore," including "whether there's a lawsuit against the environmental firm, PM." But PM's second survey—which concluded that there were no barrels buried under the property—was conducted after this meeting, and defendants mentioned nothing further regarding any potential claim against PM after that survey was completed.

None of defendants' notes state that they: (1) believed that PM and Shumaker colluded, (2) advised plaintiff that they had a viable claim against PM, or (3) intended to pursue a claim against PM. Accordingly, plaintiff has failed to point out any portion of defendants' notes showing that defendants started to build a case against PM, expanding their limited scope of representation. Therefore, the trial court did not err by granting defendants' motion for summary disposition in this regard.

## 2. CASE-WITHIN-A-CASE

Plaintiff also challenges the trial court's finding that plaintiff failed to demonstrate a viable claim against PM. Plaintiff argues that PM was either negligent or outright lying about the presence of drums at the property. We disagree.

As previously stated, "the causation element of a malpractice claim typically requires the plaintiff to prove a case-within-a-case." *Id*. at 277. Although proving the case within the case may not always be necessary, this Court has explained that the traditional case-within-a-case requirement applies to cases "where an attorney's negligence prevents the client from bringing a cause of action (*such as where he allows the statute of limitations to run*), where the attorney's failure to appear causes judgment to be entered against his client or where the attorney's negligence prevents an appeal from being perfected." *Id*. at 278-279 (quotation marks and citation omitted; emphasis added). In this case, Gibson initiated a legal malpractice action against defendants, faulting them for not suing PM before the statutory limitation period ran. Accordingly, plaintiff's claim falls squarely within the first category of cases that the case-within-a-case doctrine applies: "where an attorney's negligence prevents the client from bringing a cause of action (*such as where he allows the statute of limitations to run*) . . . ." *Id*. (quotation marks and citation omitted; emphasis added). Therefore, plaintiff is required to prove that he would have been successful in the underlying matter with PM but for defendants' malpractice. *Id*. at 273.

On appeal, plaintiff clarifies that his "tort theory was not that PM was negligent in not digging up drums. Instead, [his] theory is that PM was negligent in claiming that 250-500 drums were present on the property, when in fact, later investigation proved that there were no drums at

all." Accordingly, PM was either negligent or outright lying about the presence of drums at the property. This argument also lacks merit.

As an initial matter, plaintiff claims that someone from PM testified that there were 250-500 barrels present at the property; however, the record provides no support for that claim. In his opposition to defendants' motion for summary disposition, plaintiff claimed that "[d]uring the deposition of Tom Dawda, the GPR technician, Mr. Dawda testified there were 250-500 barrels on the property, and that it was the largest concentration he had ever seen." But plaintiff did not attach that deposition testimony in the trial court or on appeal. In fact, the only other place that any such claim can be found is in defendants' notes, where plaintiff himself reported that statement being made. In reality, PM simply reported that: (1) "[n]umerous anomalies consistent with buried materials were identified throughout the area of concern at depths between 1.5 and 4.0 feet below ground surface", and (2) "[t]he size and shape of the anomalies [were] consistent with potential drums." A PM employee subsequently testified "that the anomalies were also consistent with the size of other things, such as an engine block." *Gibson v Danilowicz Estate*, unpublished per curiam opinion of the Court of Appeals, issued February 14, 2019 (Docket No. 341579), p 2.

It is important to note that PM performed every duty that it was instructed and paid to perform in this case. Before PM conducted its first survey of the property, Shumaker warned plaintiff of the risks associated with digging for the barrels. When PM submitted a bid to perform a GPR survey, Shumaker advised plaintiff to accept the proposal, explaining that it was a practical approach to this project involving "a step by step process beginning with the GPR survey, which is a non-invasive (no digging or subsurface work) investigation method. The GPR should be able to provide some immediate general information on potential anomalies." Shumaker also advised plaintiff of what the next steps could be depending on what the GPR survey reported. Plaintiff accepted PM's proposed survey, and in 2016, PM reported that numerous buried anomalies "consistent with potential drums" were identified throughout the property. Plaintiff did not request that PM take any additional steps at the time. Later, in 2019, PM conducted additional testing and concluded that "[n]o anomalies consistent with potential orphan drums were encountered in accessible areas . . . ."

As previously discussed, there is no record evidence showing that PM colluded with Shumaker or purposefully perpetuated a lie about the presence of drums at the property. There is also no evidence that PM negligently performed the first survey. In fact, the only record evidence explaining the inconsistencies between PM's reports was PM's explanation that: (1) "due to the presence of vehicles, debris and vegetation throughout the subject property, the [2016] survey was limited and did not fully assess the area of concern"; and (2) "[l]imitations consisting of vehicles and automotive debris remained present throughout the subject property [in 2019,] and the area of concern was assessed to the extent possible." Before plaintiff accepted PM's initial proposal in 2016, Shumaker clearly advised him that "[t]he GPR equipment is about the size of a larger push lawnmower that is wheeled over the area being investigated. Accordingly, the area should be generally free of tall vegetation, heavy brush, and debris." It appears that plaintiff did not follow those instructions, and PM's initial survey produced limited findings as a result. Plaintiff has failed to explain how any limited findings were PM's fault; instead, he generally asserts that PM outright lied—a claim that simply has no record support.

Plaintiff failed to establish a material question of fact as to whether he could have successfully brought a claim against PM but for defendants' alleged negligence.  Therefore, the trial court did not err by granting defendants' motion for summary disposition in this regard.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney
/s/ Randy J. Wallace