TAYLOR, C.J.
This case requires us to construe the provision of the Single Business Tax Act (SBTA) found at MCL 208.53 that explicates how to allocate sales of intangible personal property so as to determine whether they can be taxed by Michigan. Specifically, we must decide whether receipts for plaintiffs services, performed entirely outside Michigan for construction projects located in Michigan, are deemed taxable sales under the statute and, if they are, whether that interpretation of the statute results in the statute’s being unconstitutional as a violation of the Commerce Clause, US Const, art I, § 8, cl 3. The Court of Appeals held that the services were taxable but that this section of the statute violates the Commerce Clause of the constitution and thus is unenforceable. Fluor Enterprises, Inc v Dep’t of Treasury, 265 Mich App 711; 697 NW2d 539 (2005). We reverse in part and affirm in part, agreeing that such receipts are taxable under the statute, but holding that this provision is not unconstitutional and thus is enforceable.
i
The Court of Appeals accurately summarized the facts in this case:
*173 The facts in this case are undisputed. The receipts at issue were received by plaintiff for engineering and architectural services related to real estate improvement projects constructed in Michigan. The services were performed by plaintiffs employees at out-of-state facilities. Plaintiff timely filed single business tax (SBT) returns for the years at issue. However, plaintiff did not report the receipts at issue as Michigan receipts. Following an audit, defendant issued three bills for taxes due (intents to assess) totaling $182,312.
Plaintiff requested an informal conference with defendant’s Hearings Division. Following an informal conference, the department referee issued a recommendation to the Commissioner of Revenue. The hearing referee agreed with plaintiffs interpretation of § 53(c). However, the Commissioner of Revenue disagreed with the referee’s analysis and directed that the taxes be assessed as originally determined. Following the commissioner’s order, defendant issued three bills for taxes due (final assessments) for total tax and interest of $343,340.96, which plaintiff then paid under protest. Plaintiff subsequently paid an additional $3,077.35 in interest.
Plaintiff filed this action in the Court of Claims to recover $346,618.31 paid under protest plus additional statutory interest, costs, and attorney fees. The parties both filed motions for summary disposition. Plaintiff moved for summary disposition pursuant to MCR 2.116(A) (judgment on stipulated facts). Defendant moved for summary disposition pursuant to MCR 2.116(C)(8) and (10). The Court of Claims concluded that the plain language of the statute supported plaintiffs position and entered judgment in favor of plaintiff, ordering defendant to pay $346,418.31 and interest. [Id. at 713-714.]
On appeal, the Court of Appeals reversed with regard to the Court of Claims construction of § 53 of the SBTA and held that the receipts for services performed for a construction project located in Michigan, even if the services were performed in another state, were “Michi *174 gan receipts,” but that this section of the statute was unconstitutional as a violation of the Commerce Clause.
Defendant sought leave to appeal in this Court, seeking to have the ruling of unconstitutionality reversed. Plaintiff sought leave to cross-appeal, arguing that the Court of Appeals construction of the statute was erroneous. We granted the parties’ applications for leave to appeal and cross-appeal.[1]
II
This Court reviews de novo a trial court’s decision to grant or deny a motion for summary disposition. City of Taylor v Detroit Edison Co, 475 Mich 109, 115; 715 NW2d 28 (2006). Likewise, questions of constitutional and statutory construction are reviewed de novo by this Court. Id. When interpreting a statute, we examine the language of the statute itself. “If the statute is unambiguous it must be enforced as written.” Title Office, Inc v Van Buren Co Treasurer, 469 Mich 516, 519; 676 NW2d 207 (2004).
ill
The SBTA, MCL 208.1 et seq., is a business activity tax that was enacted “to provide for the imposition, levy, computation, collection, assessment and enforcement ... of taxes on certain commercial, business, and financial activities____” 1975 PA 228. As provided by the act:
“Business activity” means a transfer of legal or equitable title to or rental of property, whether real, personal, or mixed, tangible or intangible, or the performance of services, or a combination thereof, made or engaged in, or caused to be made or engaged in, within this state, whether *175 in intrastate, interstate, or foreign commerce, with the object of gain, benefit, or advantage, whether direct or indirect, to the taxpayer or to others .... [MCL 208.3(2).]
Thus, the act by definition encompasses taxation of services that are performed not only within the state (“engaged in ... within this state”) but also some that are performed out of state, as long as the reason those services are engaged in has its source within this state (“caused to be ... engaged in [] within this state”). When business activity is partially performed out of state, the statute establishes a system of apportionment, MCL 208.40 et seq., so that only those receipts appropriate to be taxed in Michigan are taxed here. Apportioning is based on a formula whereby a fraction reflecting the ratio of Michigan activity to out-of-state activity, i.e., Michigan sales/total sales, is established. Jefferson Smurfit Corp v Dep’t of Treasury, 248 Mich App 271, 273 n 1; 639 NW2d 269 (2001). In this case, where the sales factor is at issue, the question is which sales of plaintiffs total sales should be included in its “Michigan sales” numerator.[2]
To ascertain whether receipts for intangible property, such as services, comprise “Michigan sales,” we turn to MCL 208.53. It provides:
Sales, other than sales of tangible personal property, are in this state if:
*176 (a) The business activity is performed in this state.
Ob) The business activity is performed both in and outside this state and, based on costs of performance, a greater proportion of the business activity is performed in this state than is performed outside this state.
(c) Receipts derived from services performed for planning, design, or construction activities within this state shall be deemed Michigan receipts.
Plaintiff asserts, and the Court of Claims agreed, that § 53(c) deems receipts for services taxable as Michigan receipts only if the services are performed within this state. That is, the phrase “within this state” modifies not just “activities” but also “planning,” “design,” and “construction.” Because plaintiffs planning and design services were not performed within this state, plaintiff argues, its receipts for those servives should not be taxable. We respectfully disagree with this approach. Plaintiff is essentially rewriting the statute so that “within this state” modifies “services performed.” This is not how the statute reads.
The subject of § 53(c) is “receipts”; the statute states that certain “receipts” “shall be deemed Michigan receipts.” Section 53(c) then narrows the category of receipts that will be “deemed Michigan receipts.” The term “receipts” is modified by the phrase “derived from services performed.” Thus, the statute specifies that to be “deemed Michigan receipts,” “receipts” must be “derived from services performed.” Section 53(c) further specifies which “services performed” will allow “receipts” to be “deemed Michigan receipts,” namely, services performed “for planning, design, or construction activities within this state.” The prepositional phrase “for planning, design, or construction activities” modifies “performed,” and indicates the purpose for which the services must be performed. The phrase *177 “within this state” modifies the term “activities.” The term “activities” is the object of the preposition “for,” and is modified by the preceding phrase “planning, design, or construction.” The use of the term “or” in the phrase “planning, design, or construction” indicates that all three terms are correlative to each other. The term “construction” is clearly an adjective modifying the term “activities.” Consequently, the terms “planning” and “design” are also adjectives that modify the term “activities.” Parsing the grammar otherwise would make “construction” an adjective, and “planning” and “design” nouns, and a grammatical construction that would make correlative terms unequal in this way should be avoided. Therefore, “activities” is modified by each of the terms “planning,” “design,” and “construction.” As a result, the statute indicates that “[r]eeeipts derived from” “services performed for planning activities within this state,” “services performed for design activities within this state,” and “services performed for construction activities within this state” are to be “deemed Michigan receipts.” The statute thus subjects to taxation receipts for “services performed” in support of planning activities, design activities, or construction activities, as long as those activities take place “within this state.” The statute does not state that the “services performed” must themselves be performed “within this state” in order for “[r]eceipts derived from” such services to be deemed Michigan receipts.[3] *178 Consequently, we must look at whether the receipts are derived from “services performed for” one of the enumerated activities, with no geographic limit on where the services took place, and no limit on what type of services are being performed.[4]
The statute thus establishes a two-part analysis. First, it must be determined whether the actions sought to be taxed were “services performed” for “planning activities,” “design activities,” or “construction activities.” Second, if the actions are “services performed” for such activities, it must be determined whether the activities occurred “within this state.” If the activities occurred “within this state,” then the actions are taxable under MCL 208.53(c). If the activities did not occur in Michigan, then the actions are not taxable under MCL 208.53(c).
In this case, plaintiff engaged in architectural and engineering services performed for various Michigan construction activities. Because these actions constitute “services performed” for “construction activities,” and those “construction activities” took place “within this state,” the state may tax plaintiffs architectural and *179 engineering services. Although plaintiff attempts to describe what it did as performing design and planning activities, and that those activities took place in California, this ignores language in the statute that indicates receipts are paid for services, and services are engaged in for activities. It is undisputed that plaintiff performed its architectural and engineering services in support of “construction activities” that occurred in Michigan. Consequently, plaintiffs services fall within the language of MCL 208.53(c), and plaintiffs receipts for such services are taxable in Michigan. Plaintiffs attempt to construe its services as “planning or design activities” fails to recognize that plaintiff performed its services for “construction activities” within the state of Michigan. The receipts, pursuant to MCL 208.53(c), are therefore deemed Michigan receipts.
IV
Having determined that the statute allows plaintiffs receipts for services to be taxed as Michigan receipts, we turn to the question whether such a construction results in a tax that violates the Commerce Clause, US Const, art I, § 8, cl 3. As we have explained before, a state tax withstands scrutiny under a Commerce Clause challenge and will be found constitutionally valid if it meets the four-pronged test articulated in Complete Auto Transit, Inc v Brady, 430 US 274, 279; 97 S Ct 1076; 51L Ed 2d 326 (1977). See Caterpillar, Inc v Dep’t of Treasury, 440 Mich 400, 415; 488 NW2d 182 (1992). A valid tax: (1) is applied to an activity having a substantial nexus with the taxing state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services provided by the state. Id.
*180 Plaintiff first argues that it does not have a sufficient nexus with this state to be subject to the tax. “The requisite ‘nexus’ is supplied if the corporation avails itself of the ‘substantial privilege of carrying on business’ within the State . . . .” Mobil Oil Corp v Comm’r of Taxes of Vermont, 445 US 425, 437; 100 S Ct 1223; 63 L Ed 2d 510 (1980). “ ‘[The] fact that a tax is contingent upon events brought to pass without a state does not destroy the nexus between such a tax and transactions within a state for which the tax is an exaction.’ ” Id., quoting Wisconsin v J C Penney Co, 311 US 435, 445; 61 S Ct 246; 85 L Ed 267 (1940). See also Caterpillar, Inc, supra at 416-417. The receipts at issue in this case were for services that plaintiff provided for construction projects in Michigan, and therefore “the incidence of the tax as well as its measure is tied to the earnings which the State ... has made possible ....” J C Penney Co, supra at 446. Thus, there is a substantial nexus between the state and the activity being taxed.
Also at issue in this case is whether the tax imposed by MCL 208.53(c) is fairly apportioned. That is, the tax is not fairly apportioned if it allows Michigan to tax more than its fair share of interstate business activity. Caterpillar, supra at 417. A tax is not fairly apportioned if it is not internally consistent. “ ‘To be internally consistent, a tax must be structured so that if every State were to impose an identical tax, no multiple taxation would result,’ ... or, in other words, no more than one hundred percent of the taxpayer’s business activity would be taxed.” Id. at 419, quoting Goldberg v Sweet, 488 US 252, 261; 109 S Ct 582; 102 L Ed 2d 607 (1989).[5] As the United States Supreme Court has said, internal consistency
*181 simply looks to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate. A failure of internal consistency shows as a matter of law that a State is attempting to take more than its fair share of taxes from the interstate transaction, since allowing such a tax in one State would place interstate commerce at the mercy of those remaining States that might impose an identical tax. [Oklahoma Tax Comm v Jefferson Lines, Inc, 514 US 175, 185; 115 S Ct 1331; 131 L Ed 2d 261 (1995).]
In applying the “internal consistency” test, the United States Supreme Court has considered the entire taxing scheme, and not simply the individual tax provision at issue in a specific case. See, e.g., D H Holmes Co, Ltd v McNamara, 486 US 24; 108 S Ct 1619; 100 L Ed 2d 21 (1988) (considering a provision of the larger tax scheme). If the entirety of MCL 208.53 is considered, the statute is internally consistent. When we survey the statute as a whole, we conclude that § 53(c) is a more specific exception to the general subsections that precede it (§§ 53[a] and 53[b]). See, e.g., Jones v Enertel, Inc, 467 Mich 266, 270; 650 NW2d 334 (2002) (“ ‘[W]here a statute contains a general provision and a specific provision, the specific provision controls.’ ” [Citation omitted.]). In other words, § 53(a) applies to business activity that is solely performed in Michigan; § 53(b) applies to business activity that occurs both in and outside Michigan; and § 53(c) applies a special rule to planning, design, and construction activities, which is that as long as the services are performed for one of those activities, and the activity is located within this state, the receipts for the services are taxable regardless of where the services are performed. This language excepts certain receipts from the broad rules of § 53(a) and (b). It is, then, a specific exception to a general rule and falls within the Jones test. Therefore, if California *182 had a tax statute identical to MCL 208.53, in order to determine whether California could tax plaintiffs receipts for the services in this case, it would first have to consider whether the services were performed for planning activities, design activities, or construction activities. Because the services in this case were performed for construction activities, California would be precluded from considering whether its counterpart to either § 53(a) or (b) allowed the receipts for the services to be taxed, because the more specific provisions of § 53(c) would govern. Having determined that the services were performed for “construction activities,” California would then consider whether these activities occurred within that state. Because the construction activities, in fact, occurred in Michigan, California would be unable to tax these under its counterpart statute. Consequently, because the planning activity, design activity, or construction activity can take place only in one state at a time, only one state can tax the receipts for the “services performed for” those activities. Therefore, if every state had a counterpart statute to MCL 208.53, interstate commerce would not be unfairly burdened or placed at any disadvantage. Therefore, because MCL 208.53 does not discriminate against interstate commerce, the statute does not violate the “internal consistency” test.
v
We conclude that MCL 208.53 is not ambiguous and that plaintiffs receipts for the services are taxable, regardless of where the services occurred, because they were performed for construction projects located in Michigan. We also hold that this interpretation does not violate the “fair apportionment” prong of the Commerce Clause because the statute is internally consis *183 tent. Likewise, we hold that plaintiff and its taxed activity have a substantial nexus with this state. We therefore affirm in part the Court of Appeals judgment but reverse it in part with regard to the analysis of fair apportionment, and we remand the case to the Court of Claims for further proceedings not inconsistent with this opinion.
Corrigan, Young, and Markman, JJ., concurred with Taylor, C.J.

 474 Mich 1097 (2006).

 See MCL 208.51:
(1) The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this state during the tax year, and the denominator of which is the total sales of the taxpayer everywhere during the tax year.
(2) For a foreign person, the sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this state during the tax year, and the denominator of which is the total sales of the taxpayer in the United States during the tax year.

 The concurrence finds the statute ambiguous because other interpretations have been proposed, citing People v Adair, 452 Mich 473, 479; 550 NW2d 505 (1996), for the rule that ambiguity exists when there can be reasonable disagreement over a statute’s meaning. However, our current law is set forth in Lansing Mayor v Pub Service Comm, 470 Mich 154, 166; 680 NW2d 840 (2004), where this Court held: “[A] provision of the law is ambiguous only if it ‘irreconcilably conflict^]’ with another provision or when it is equally susceptible to more than a single *178 meaning.” (citation omitted; emphasis in original). “[A] finding of ambiguity is to be reached only after ‘all other conventional means of [] interpretation’ have been applied and found wanting.” Id. at 165, quoting Klapp v United Ins, 468 Mich 459, 474; 663 NW2d 447 (2003). The meaning of MCL 208.53 can be determined from the text of the statute and by using conventional means of statutory construction. Nothing in the statute irreconcilably conflicts or makes it equally susceptible to more than one meaning.

 We note that the phrase “deemed Michigan receipts” itself reinforces the extraterritoriality of this provision, because this phrase suggests that receipts for activities that would not ordinarily be considered Michigan receipts will be considered, or treated as, Michigan receipts for purposes of the statute. Because receipts for Michigan activities would ordinarily be considered Michigan receipts, this implies that receipts that are “deemed Michigan receipts” are for activities that take place outside the state.

 A taxing statute must also be externally consistent, Caterpillar, Inc, supra at 419, but because plaintiff does not challenge this, we examine only its internal consistency.