KELLY, J.
{concurring in part and dissenting in part). I agree with the majority that defendants’ millage proposals violated MCL 224.20b. However, I disagree that no remedy exists for the violations. I would hold that an equitable remedy is available, affirm the judgment of the Court of Appeals, and remand the case to the trial court for further proceedings.
*536 THE GOVERNING STATUTORY PROVISIONS
I begin, as is appropriate, with the language of the statute. The taxes in this case were levied under the authority of MCL 224.20b. It provides:
(1) Notwithstanding any other provision of this act, the board of commissioners of any county by proper resolution may submit to the electorate of the county at any general or special election the question of a tax levy for highway, road and street purposes or for 1 or more specific highway, road or street purposes, including but not limited to bridges, as may be specified by the board.
(2) Unless otherwise agreed by the governing bodies of the cities and villages and the board of county road commissioners the revenues derived from the tax levy authorized by this section shall be allocated and distributed by the county treasurer as follows:
(a) To the county road fund:
(i) A percentage of the total revenues equal to the proportion that the state equalized valuation of the unincorporated area of the county bears to the total state equalized value of the county.
(ii) A percentage of the remainder of the revenues equal to the proportion that the county primary road mileage within cities and villages bears to the total of the city and village major street mileage in the county plus the county primary road mileage within cities and villages in the county. The mileages to be used are the most recent mileages as certified by the state highway commission.
(b) The remaining revenues shall be distributed to the cities and villages in the proportion that the state equalized valuation of each bears to the total state equalized valuation of the incorporated areas of the county.
(3) The revenues allocated to the cities and villages shall be expended exclusively for highway, road and street purposes. The revenues allocated to the county road fund shall be expended by the board of county road commissioners exclusively for highway, road and street purposes.
*537 (4) Notwithstanding the provisions of section 22 of this chapter, section 7 of Act No. 156 of the Public Acts of 1851, as amended, being section 46.7 of the Compiled Laws of 1948, or section 1 of Act No. 28 of the Public Acts of 1911, being section 141.71 of the Compiled Laws of 1948, a board of county commissioners shall not submit to the electorate of the county the question of a tax levy for any highway, road or street purpose, including but not limited to bridges, nor submit the question of borrowing money for any such purpose, to be voted upon at any election held on or after September 1, 1971 unless the revenues or proceeds are allocated and distributed in the same manner as the revenues derived from a tax levy authorized by this section.
Pursuant to subsection 1, the board of county commissioners can submit to the electorate a tax levy for either a specific or a general purpose. MCL 224.20b(l). The monies raised from the levy must be allocated in accordance with the formula set forth in subsection 2. MCL 224.20b(2).[1] There is no dispute that plaintiff, the city of South Haven, is a municipality for purposes of subsection 2. Hence, plaintiff was entitled to a portion of the proceeds from each of the ballot proposals.
However, without dispute, plaintiff did not receive any of the revenues generated. They were all to be used for maintaining and repairing primary and local county roads.[2] Presumably because no county roads existed *538 within plaintiffs city limits, plaintiff did not receive any of the revenues.
Yet, the statutory language is unambiguous. This Court has repeatedly stated that it will enforce unambiguous statutes as written.* *[3] Therefore, this Court should enforce the statute and remand the case to the trial court for a determination of what portion of the revenues should have been distributed to plaintiff.
But the majority refuses to do so, even though it (1) notes that the term “shall,” as used in the statute, indicates that the formula for allocating funds is mandatory, (2) states that “[t]he phrasing of the ballot proposal is irrelevant to these statutory responsibilities and cannot be a vehicle for avoiding their application,” and (3) states that “ ‘ “[i]f the statute’s language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written.” ’ ” Ante at 528, quoting Parkwood Ltd Dividend Housing Ass’n v State Housing Dev Auth, 468 Mich 763, 772; 664 NW2d 185 (2003).
*539 THE EFFECT OF THE LANGUAGE OF THE MILLAGE PROPOSALS
The majority sanctions defendants’ unlawful diversion of funds by noting that the General Property Tax Act (GPTA), MCL 211.1 et seq., requires that a ballot proposal “fully disclose each local unit of government to which the revenue from that millage will be disbursed,”[4] and make “[a] clear statement of the purpose for the millage.”[5] See ante at 531-532. The majority essentially concludes that, because the ballot proposals satisfied the GPTA, described how revenues would be distributed, and stated why the millages were being levied, the proposals trumped MCL 224.20b. I disagree.
First, as noted earlier, this Court applies unambiguous statutes as written. The Legislature provided unambiguously in MCL 224.20b the method of distribution. Second, even if the ballot proposals satisfied MCL 211.24f, they violated MCL 224.20b. Therefore, regardless of the language in the proposals, the proposals themselves were illegal. Third, as the majority acknowledges, MCL 211.24f does not preclude using tax revenues generated by a ballot proposal for purposes other than the purpose stated in the proposal. This is especially significant in situations such as the instant case, in which the ballot proposals were illegal.
This Court acknowledged in 1988 that the Legislature has the power to determine how tax revenues may be spent. In Advisory Opinion on Constitutionality of 1986 PA 281,[6] this Court addressed the constitutionality of certain provisions of 1986 PA 281, MCL 125.2151 et seq., entitled the Local Development Financing Act. One of the questions presented was whether the capture and use of tax increment revenues by a local devel *540 opment finance authority violated the state constitution at Const 1963, art 9, § 6. Advisory Opinion on Constitutionality of 1986 PA 281, 430 Mich 93, 97; 422 NW2d 186 (1988).
Amici curiae argued that, once the voters adopt an extra millage proposition for school funding purposes, any diversion of that millage to a local development funding authority violates the constitution. Id. at 108. This Court rejected that argument and concluded that article 9, § 6 of the constitution did not govern the capture and use of tax increment revenues. Id. at 107, 111. This Court farther noted that “ ‘in exercising the powers of the state the legislature may require the revenue of a municipality, raised by taxation, to be applied to uses other than that for which the taxes were levied.’ ” Id. at 113, quoting Tribe v Salt Lake City Corp, 540 P2d 499, 504 (Utah, 1975).[7]
In keeping with the reasoning of Advisory Opinion on Constitutionality of 1986 PA 281, the Legislature may apply tax revenues for purposes other than those for which the people intended them. By contrast, no persuasive authority exists for the proposition that defendants here, through an illegal ballot proposal, could distribute the taxes raised contrary to the manner specified in a governing statute.
THE AVAILABILITY OF A REMEDY
Moreover, the majority is incorrect in concluding that the only remedies available to plaintiff were to enjoin *541 collection of the millages or to compel refund of the monies to the taxpayers. Neither the trial court nor the Court of Appeals discussed whether any remedies or corresponding defenses were available. The question should be resolved first by the trial court on remand. However, I believe that equitable remedies are available, subject to any defense a defendant might have.
As an initial matter, the majority concludes that, because the Legislature did not expressly provide for a private cause of action, plaintiff cannot seek restitution for a violation of MCL 224.20b. It supports this conclusion by citing MCL 224.30, which states:
(1) If an audit or investigation conducted under this act discloses statutory violations on the part of an officer, employee, or board of a county road commission, a copy of the report shall be filed with the attorney general who shall review the report and cause to be instituted a proceeding against the officer, employee, or board as the attorney general deems necessary.
(3) The attorney general or the prosecuting attorney shall institute civil action in a court of competent jurisdiction for the recovery of public moneys disclosed by an examination to have been illegally expended or collected and not accounted for and for the recovery of public property disclosed to have been converted and misappropriated.
However, not only is MCL 224.30 inapplicable to the instant case, it provides an inadequate remedy to a city in plaintiffs position.
The procedure for an audit referred to in MCL 224.30(1) is set forth in MCL 224.26: “Every county road commission in counties of more than 50,000 population shall have an annual audit of its financial *542 records, accounts, and procedures, including those required by law governing the disposition of any state funding.” MCL 224.26(1).[8]
In this case, it is presumed that, in accordance with MCL 224.26, the county road commission had an audit performed every year or every other year since 1976. However, no audit or investigation revealed any statutory violations. Because there were no reported violations, there was no need for the Attorney General to institute proceedings under MCL 224.30.8 [9] Therefore, not only is MCL 224.30 inapplicable in the instant case, it provides an inadequate remedy to plaintiff, as shown by the fact that no investigation was ever commenced.
The majority concludes that plaintiffs sole statutory remedy is through the Attorney General. It also concedes that plaintiff may enjoin collection of the improper millage or seek a refund of the collected taxes. See ante at 531. However, I believe that other remedies are available.
For example, in its complaint, plaintiff asked for relief in the form of an order of mandamus.[10] The wrong *543 for which plaintiff seeks a remedy is a statutory violation, and in the past our courts have granted mandamus relief for statutory violations. In City of Belding v Ionia Co Treasurer, a statute required the county treasurer to apportion penal fines to libraries. City of Belding v Ionia Co Treasurer, 360 Mich 336, 343; 103 NW2d 621 (1960). This Court ordered the treasurer to comply with the statute. We recognized that “[a] clear legal duty reposes on the county treasurer in this regard, and a clear legal right is plaintiffs to receive the apportionment from him.” Id. at 344. The plaintiffs action was properly brought against the treasurer, and the treasurer was required by mandamus to apportion the funds as the statute required. Id.
Similarly, in Grand Rapids Pub Schools v Grand Rapids,[11] the Court of Appeals recognized that, if required to do so by statute, the county treasurer had to properly distribute earned interest. The Court of Appeals noted that a city or county treasurer is a fiduciary in the management and application of public funds. Id. at 657.
In this case, defendant county treasurer had a statutory duty to distribute the millage revenue as set forth in MCL 224.20b(2) because there was no agreement to the contrary. It is undisputed that the treasurer neglected to do so, distributing nothing to plaintiff. Hence, *544 the treasurer violated her statutory duty, and, as a consequence, plaintiff was denied its statutory right to receive the funds. If the trial court were to determine that plaintiff is entitled to relief in this case, it could issue an order of mandamus.[12]
CONCLUSION
I agree with the majority that the millage proposals under consideration in this case violated MCL 224.20b. However, I disagree that no remedy exists for the violations. I also disagree that the millage revenues were properly distributed when, although they were spent in accordance with the millage proposals, they were distributed in violation of the statute. Accordingly, I would remand this matter to the trial court with directions that it set aside its denial of plaintiffs motion for summary disposition and proceed with the case.

 The allocation set forth in subsection 2 is applicable unless there is an agreement to the contrary among the governing bodies of the county’s municipalities and the board of county road commissioners. In the instant case, there was never an agreement.

 The 2003 ballot proposal stated:
Shall there be an additional one (1) mill levy in the amount of one (1) dollar per thousand dollars of the state equalized valuation for the property in Van Burén County, for a period of five (5) years, to be used by the Van Burén County Road Commission specifically for the purpose and repair and reconstruction of primary county roads and local county roads of Van Burén County?
*538 Similar ballot proposals appeared in 1978, 1980, 1984, 1988, 1994, and 1998. The amounts and the renewal periods varied.

 One need look no further than the instant court term to observe that this Court has repeatedly stated that it will enforce unambiguous statutes as written. See, e.g., Fluor Enterprises, Inc v Dep’t of Treasury, 477 Mich 170, 174; 730 NW2d 722 (2007) (“ ‘If the statute is unambiguous it must be enforced as written.’ ”) (citation omitted); Rowland v Washtenaw Co Rd Comm, 477 Mich 197, 202; 731 NW2d 41 (2007) (‘‘When the language is unambiguous, we give the words their plain meaning and apply the statute as written.”); Apsey v Mem Hosp, 477 Mich 120, 127; 730 NW2d 695 (2007) (“To accomplish this task, we start by reviewing the text of the statute, and, if it is unambiguous, we will enforce the statute as written because the Legislature is presumed to have intended the meaning expressed.”); Haynes v Neshewat, 477 Mich 29, 35; 729 NW2d 488 (2007) (“If the statute is unambiguous, this Court will apply its language as written.”); Saffian v Simmons, 477 Mich 8, 12; 727 NW2d 132 (2007) (“ ‘If the statute is unambiguous it must be enforced as written.’ ”) (citation omitted).

 MCL 211.24f(1).

 MCL 211.24f(2)(d).

 430 Mich 93; 422 NW2d 186 (1988).

 The majority contends that Advisory Opinion on Constitutionality of 1986 PA 281 does not control here because this Court limited the holding in that case to the issues presented. The majority is correct that Advisory Opinion on Constitutionality of 1986 PA 281 is not binding authority. Nonetheless, it is persuasive and indicates this Court’s willingness to abide by a distribution formula set forth by the Legislature, as opposed to that contained in an illegal ballot proposal.

 MCL 224.26(2) provides that in counties with a population of less than 50,000, the audit shall be required not less frequently than biennially. The county road commission must have a certified public accountant perform the audit. MCL 224.27. If the county road commission fails to have the audit done, the Department of Treasury must have it done. Id.

 In fact, before the instant proceedings commenced, plaintiff informed defendant county treasurer that the funds collected by the millages were not being distributed as required by MCL 224.20b. Rather than commencing an investigation, defendants dismissed plaintiff’s request for an accounting.

 As this Court noted in State Bd of Ed v Houghton Lake Community Schools, 430 Mich 658, 666-667; 425 NW2d 80 (1988):
[T]o obtain a writ of mandamus, the plaintiff must have a clear legal right to the performance of the specific duty sought to be *543 compelled and the defendants must have a clear legal duty to perform the same. Pillon v Attorney General, 345 Mich 536, 539; 77 NW2d 257 (1956); Janigian v Dearborn, 336 Mich 261, 264; 57 NW2d 876 (1953).. .. The primary purpose of the writ of mandamus is to enforce duties created by law, Kosiba v Wayne Co Bd of Auditors, 320 Mich 322, 326; 31 NW2d 68 (1948), where the law has established no specific remedy and where, in justice and good government, there should be one. Lenz v Detroit Mayor, 338 Mich 383, 395; 61 NW2d 587 (195s3).

 146 Mich App 652; 381 NW2d 783 (1985).

 The majority disagrees that an order of mandamus is available, because the ballots complied with MCL 211.24f. However, for the reasons stated, I disagree with the majority that compliance with MCL 211.24f in any way diminishes the violation of MCL 224.20b.