# STATE OF MICHIGAN

# COURT OF APPEALS

---

NEW COVERT GENERATING COMPANY,

       Petitioner-Appellee,

v

COVERT TOWNSHIP,

       Respondent-Appellant.

UNPUBLISHED
August 4, 2015

No. 320877
Tax Tribunal
LC No. 00-399578

---

Before: O'CONNELL, P.J., and OWENS and M. J. KELLY, JJ.

PER CURIAM.

Respondent appeals as of right from the Michigan Tax Tribunal's final opinion and judgment, as modified on reconsideration, regarding the true cash value (TCV) and allocation of petitioner's property for 2010 and 2011. We affirm.

The property at issue (the Covert Plant) consisted of two parcels, one industrial real property parcel and one industrial personal property parcel.[1] The property is improved with a 1,100 megawatt natural gas-fired combined-cycle generation station comprised primarily of three combined-cycle power blocks,[2] cooling towers, a water storage tank, and related equipment. Petitioner purchased the four-year-old Covert plant, which was generating electricity to sell on the open market, in 2008.

The TCV of the real and personal property was assessed at $404,568,800 for 2010 and at $401,045,900 for 2011. Petitioner appealed both years. In valuation disclosures provided to the tribunal, petitioner claimed that the aggregate TCV of the property in 2010 was $149,947,594, and respondent claimed that the aggregate TCV of the property was $506,475,000. For 2011, petitioner claimed that the aggregate TCV of the property was $334,947,599, and respondent claimed that the aggregate TCV of the property was $475,000,000. On May 4, 2013, the tribunal

---

[1] The property originally consisted of two parcels for tax years 2010 and 2011. In December 2012, the State Tax Commission (STC) ordered that a separate parcel for turbine personal property be established for tax year 2011.

[2] Each power block includes one gas turbine/generator, one heat recovery system generator, and one steam turbine/generator.

issued an opinion of value using the cost-less depreciation method and determined the aggregate TCV of the property for 2010 to be $181,100,100, and for 2011 to be $217,400,000. The tribunal concluded that respondent's appraisal using the cost approach was not reliable because it contained little supporting data and no substantive commentary, and that petitioner's cost approach was well-reasoned and supported by the evidence. The tribunal subsequently held a separate hearing to determine the allocation of value between the parcels, and entered a final opinion and judgment on February 5, 2014. Petitioner moved for reconsideration of the final opinion, and the tribunal granted the motion and amended the aggregate TCV of the property to $179,100,000 for 2010 and $228,400,000 for 2011.

## I. STANDARDS OF REVIEW

This Court's review of a decision by the Tax Tribunal is limited. *Mich Props, LLC v Meridian Twp*, 491 Mich 518, 527; 817 NW2d 548 (2012). In the absence of fraud, we review the tribunal's decisions for an incorrect application of the law or the adoption of wrong legal principles. *Briggs Tax Serv, LLC v Detroit Pub Sch*, 485 Mich 69, 75; 780 NW2d 753 (2010). The tribunal's factual findings are conclusive if they are supported by competent, material, and substantial evidence on the record. Const 1963, art 6, § 28; *Klooster v Charlevoix*, 488 Mich 289, 295; 795 NW2d 578 (2011). Although this Court will generally defer "to the Tax Tribunal's interpretation of a statute that it is delegated to administer," *Beznos v Dep't of Treasury (On Remand)*, 224 Mich App 717, 721; 569 NW2d 908 (1997), questions of law, including the proper application and interpretation of tax statutes, are reviewed de novo, *Ford Motor Co v City of Woodhaven*, 475 Mich 425, 438; 716 NW2d 247 (2006). "Whether a court has subject-matter jurisdiction is a question of law subject to review de novo." *In re Wayne Co Treasurer*, 265 Mich App 285, 290; 698 NW2d 879 (2005).

## II. JURISDICTION

### A. Interpretation of MCL 205.735a

Respondent first argues that the Tax Tribunal did not have jurisdiction over petitioner's industrial personal property appeals because petitioner failed to file the required statements of assessable property in both 2010 and 2011. This issue initially involves the correct interpretation and application of MCL 205.735a(4)(b), a subsection of MCL 205.735a, which concerns the jurisdiction of the Tax Tribunal with respect to proceedings commenced in the tribunal after December 31, 2006. MCL 205.735a provides, in relevant part:

> (3) Except as otherwise provided in this section or by law, for an assessment dispute as to the valuation or exemption of property, the assessment must be protested to the board of review before the tribunal acquires jurisdiction of the dispute under subsection (6).

> (4) In the 2007 tax year and each tax year after 2007, all of the following apply:

> (a) For an assessment dispute as to the valuation or exemption of property classified under section 34c of the general property tax act, 1893 PA 206, MCL 211.34c, as commercial real property, industrial real property, or developmental real property, the assessment may be protested before the board of review or

-2-

appealed directly to the tribunal without protest before the board of review as provided in subsection (6).

(b) For an assessment dispute as to the valuation or exemption of property classified under section 34c of the general property tax act, 1893 PA 206, MCL 211.34c, as commercial personal property, industrial personal property, or utility personal property, the assessment may be protested before the board of review or appealed directly to the tribunal without protest before the board of review as provided in subsection (6), if a statement of assessable property is filed under section 19 of the general property tax act, 1893 PA 206, MCL 211.19, prior to the commencement of the board of review for the tax year involved.

\* \* \*

(6) The jurisdiction of the tribunal in an assessment dispute as to property classified under section 34c of the general property tax act, 1893 PA 206, MCL 211.34c, as commercial real property, industrial real property, developmental real property, commercial personal property, industrial personal property, or utility personal property is invoked by a party in interest, as petitioner, filing a written petition on or before May 31 of the tax year involved.

The Legislature enacted MCL 205.735a to allow specified persons to bypass the board of review and appeal property tax assessments directly to the Tax Tribunal. *Spartan Stores v City of Grand Rapids*, 307 Mich App 565, 572; 861 NW2d 347 (2014). The dispute in this case concerns the interpretation of subsection (4)(b). Respondent argues that the statutory language is clear and, applying the last antecedent rule, the modifying phrase, "if a statement of assessable property is filed prior to the commencement of the board of review for the tax year involved" applies to the entire antecedent phrase due to the placement of the comma before the modifying phrase. Thus, respondent argues that a personal property tax assessment may (1) be protested before the board of review if a statement of assessable property is filed prior to the commencement of the board of review for the tax year involved, or (2) be appealed directly to the tribunal without protest before the board of review if a statement of assessable property is filed prior to the commencement of the board of review for the tax year involved. Under respondent's interpretation of the statute, if a petitioner does not file a statement of assessable property before the March board of review, the Tax Tribunal cannot acquire jurisdiction over a personal property assessment dispute even if a petitioner protests to the board of review.

Petitioner argues that the modifying phrase is only applicable to the phrase, "appealed directly to the tribunal without protest before the board of review as provided in subsection (6)." Petitioner contends that the last antecedent rule does not govern the interpretation of a statute where the result would be inconsistent with the purpose of the statute. Under petitioner's interpretation of the statute, a petitioner can (1) timely protest a personal property assessment before the board of review, or (2) appeal directly to the Tax Tribunal if the petitioner files a statement of assessable property prior to the commencement of the board of review for the tax year involved.

-3-

A statutory provision is ambiguous if it irreconcilably conflicts with another provision or when it is equally susceptible to more than one meaning. *Fluor Enterprises, Inc v Dep't of Treasury,* 477 Mich 170, 177–178 n 3; 730 NW2d 722 (2007). Here, it is not the words of the statute per se that lead to ambiguity, but the punctuation – in particular, the comma before the modifying phrase. Does the statute require a petitioner who protests to the board of review to file a statement of assessable property before commencement of the board of review in order to invoke the jurisdiction of the Tax Tribunal under MCL 205.735a(6), or does the statute only require one who wishes to bypass the board of review and appeal directly to the tribunal without protest to file a statement of personal property before the commencement of the board of review in order to invoke the jurisdiction of the Tax Tribunal under MCL 205.735a(6)?

This Court follows the established rules of statutory construction, the foremost of which is to discern and give effect to the intent of the Legislature." *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, ___ Mich ___; ___ NW2d ___ (2015). The language of the statute is the most reliable evidence of that intent, and this Court enforces the clear and unambiguous language of the statute as written. *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013). When necessary to interpret an ambiguous statute, the appellate courts must determine the reasonable construction that best effects the Legislature's intent. *Mich Basic Prop Ins Ass'n v Office of Fin and Ins Regulation*, 288 Mich App 552, 559; 808 NW2d 456 (2010). "Where the language of a statute is of doubtful meaning, a court must look to the object of the statute in light of the harm it is designed to remedy, and strive to apply a reasonable construction that will best accomplish the Legislature's purpose." *Marquis v Hartford Accident & Indemnity (After Remand),* 444 Mich 638, 644, 513 NW2d 799 (1994). This Court assumes that every word has some meaning and, as far as possible, gives effect to every sentence, phrase, clause, and word, avoiding a construction that would render any part of the statute surplusage or nugatory. *Pohutski v City of Allen Park,* 465 Mich 675, 683–684; 641 NW2d 219 (2002).

MCL 205.735a provides a general jurisdictional rule in § (3) that provides that an assessment dispute must be protested before the board of review prior to the Tax Tribunal acquiring jurisdiction in accordance with the petition filing requirements of subsection (6). MCL 205.735a provides exceptions to the general rule, however, in subsection (4). Each subsection restates the general jurisdictional rule, but makes the general rule permissive rather than mandatory. Thus, while protest before board of review is not required for property covered in each of the three subsections prior to an appeal before the Tax Tribunal, protest before the board of review remains an available course. Respondent's proposed reading of the exception in subsection (4)(b) would add a requirement to the exception that does not exist in the general rule in section (3); that is, section (3) requires only that a petitioner protest an assessment before the board of review and does not require the filing of a statement of assessable personal property in order to allow the tribunal to acquire jurisdiction of the dispute under MCR 205.735a(6) upon the timely filing of a petition. Subsection (4)(b) similarly permits a petitioner to protest an assessment before the board of review, but also offers a petitioner the option of appealing to the tribunal without protest if an additional condition is satisfied: a statement of assessable property must be filed under § 19 of the general property tax act before commencement of the board of review for the particular tax year. This interpretation is consistent with legislative intent as explained in *Spartan Stores*, 307 Mich App at 572. Construing MCL 205.735a(4)(b) to permit a taxpayer to either (1) protest a personal property assessment before the board of review before filing a petition in the tribunal, or (2) appeal directly to the tribunal without protest before the

board of review if a statement of assessable property is filed under section 19 of the general property tax act prior to the commencement of the board of review for the tax year involved, best fulfills the objective of the statute.

## B. Application of MCL 205.735a(4)(b)

Respondent does not dispute that petitioner protested the personal property assessment before the board of review for 2011. Thus, petitioner complied with both MCL 205.735a(3) and MCL 200.735a(4)(b), and the Tax Tribunal acquired jurisdiction over the 2011 personal property assessment when petitioner timely filed a petition under MCL 205.735a(6). Petitioner did not, however, protest the personal property assessment before the board of review for 2010. Thus, MCL 205.735a(4)(b) required petitioner to file a statement of assessable property in order to appeal directly to the tribunal without protest before the board of review.

MCL 205.735a(4)(b) refers to "a statement of assessable property . . . filed under section 19 of the general property tax act, 1893 PA 206, MCL 211.19." Section 735a(4)(b) does not specify that a *specific statement* must be filed. However, subsection (4)(b) refers to MCL 211.19, which provided in relevant part:[3]

> (2) The supervisor or other assessing officer shall require any person whom he or she believes has personal property in their possession to make a statement of all the personal property of that person whether owned by that person or held for the use of another. The statement shall be delivered to the supervisor or assessor on or before February 20 of that year.

> (3) If a supervisor, an assessing officer, a county tax or equalization department provided for in section 34, or the state tax commission considers it necessary to require from any person a statement of real property assessable to that person, it shall notify the person, and that person shall submit the statement.

> * * *

> (5) A statement under subsection (2) or (3) shall be in a form prescribed by the state tax commission . . . .

There is no dispute that form 4175 is issued by the STC for reporting personal property. Respondent argues that petitioner's filing of form 4175 in this case was not a sufficient statement of assessable property because the instructions for form 4175 required petitioner to also file real property forms 3991 and 4094 to report turbines and generators. The instructions for form 4175, however, do not require the attachment of real property statements and specifically exclude reporting information for "[t[he costs of an electrical generating facility, including the costs of all attached equipment that is integrated as a component in accomplishing the generating process, such as boilers, gas turbines and generators."

---

[3] MCL 211.19(2) was amended by 153 PA 2013, effective November 5, 2013.

In sum, MCL 205.735a(4)(b) does not specify that a specific statement must be filed; the plain language of MCL 211.19 requires the filing of a statement of assessable property in a form prescribed by the state tax commission. The state tax commission has prescribed form 4175 as a personal property statement. Petitioner filed form 4175 for tax year 2010[4] and thereby complied with the requirements of section 735a(4)(b). The Tax Tribunal properly determined that it had jurisdiction over petitioner's personal property assessment dispute for tax years 2010 and 2011.

## III. DETERMINATION OF VALUE

Respondent argues that the tribunal's determination of value was based on the tribunal's adoption of wrong legal principles in four critical areas of the cost-less-depreciation approach: replacement cost new, determination of functional obsolescence, determination of economic obsolescence, and the calculation of replacement cost new less depreciation.[5]

### A. Replacement Cost New

Replacement cost new is the current cost of a similar new property having the nearest equivalent utility as the property being appraised. *Wayne Co v Michigan State Tax Comm*, 261 Mich App 174, 208; 682 NW2d 100 (2004). Respondent argues that petitioner's appraiser improperly determined the replacement cost new "by taking a hypothetical 2009 cost estimate for a smaller (400 MW) combined cycle electric plant, with a simple 'one-on-one' gas to steam configuration and multiplied by the cost by a 'scale factor' of 0.6 to arrive at 1,100 MW plant with three one-on-one configurations. He then adjusted for a difference in time by concerting the 2009 estimate into 2011 dollars by use of an index." Specifically, respondent argues that petitioner's appraiser based his use of a 0.6 scale factor on a portion of an appraisal text and did not independently calculate the scale factor.

In calculating replacement cost new, both parties' appraisers first calculated the cost of a modern plant. Both parties' appraisers relied on the same Energy Information Administration data for a 400 mw plant as a model for their replacement cost new calculation. The tribunal found petitioner's appraiser's analysis proper and thorough, and found respondent's appraiser's analysis wholly lacking. The tribunal noted that respondent's appraiser "did not make any adjustment for economies of scale or other variables associated with the subject 1,100 mw plant." Respondent's appraiser assumed the value would be tripled, while petitioner's appraiser

---

[4] Petitioner also filed form 4175 for tax year 2011.

[5] We reject respondent's assertion that the tribunal failed to make its own finding of true cash value and simply adopted the value as determined by petitioner's appraiser. At the hearing on petitioner's motion for reconsideration, the tribunal noted that petitioner's appraiser submitted more than 1,000 pages of documentation and calculations in support of his appraisal and that the tribunal independently and thoroughly reviewed the evidence before adopting petitioner's cost approach with modification. Thus, the tribunal met its obligation of making its own finding of true cash value. *Wolverine Tower v Ann Arbor*, 96 Mich App 780, 781; 293 NW2d 669 (1980).

applied a 0.6 scale factor[6]. The tribunal explained the need for a scale factor, why it was appropriate, how it was supported by the evidence, and that neither respondent nor its appraiser presented any evidence with regard to a size adjustment. Respondent has failed to demonstrate that the tribunal's application of a scale factor constituted the adoption of a wrong principle.

## B. Functional Obsolescence

"Functional obsolescence refers to 'a loss of value brought about by failure or inability of the assessed property to provide full utility. ' " *Forest Hills Coop v City of Ann Arbor*, 305 Mich App 572, 591; 854 NW2d 172 (2014), quoting *Meijer, Inc v City of Midland*, 240 Mich App 1, 4 n 4; 610 NW2d 242 (2000). The tribunal accepted petitioner's appraiser's conclusion that the Covert plant suffered from functional obsolescence due to excess operating expenses because the heat rates in the Covert plant are less efficient than the heat rates in newer modern plants. Respondent argues that the tribunal erred by adopting petitioner's appraiser's calculation of functional obsolescence because no modern plant existed with which to compare heat rates. However, both parties' appraisers compared the Covert plant to a more efficient, more technologically advanced plant when making a determination whether functional obsolescence existed. Respondent has failed to meet its burden of showing that the tribunal adopted a wrong legal principle when determining whether the Covert plant suffered from functional obsolescence.

## C. Economic Obsolescence

"Economic obsolescence refers to a 'loss of value occasioned by outside forces.' " *Forest Hills Coop*, 305 Mich App at 591, quoting *Fisher-New Ctr Co v Mich State Tax Comm*, 380 Mich 340, 362; 157 NW2d 271 (1968), vacated on other grounds on reh 381 Mich 713 (1969). Both parties' appraisers agreed that the Covert plant suffered from economic obsolescence, with petitioner's appraiser calculating economic obsolescence at 65% for 2010 and 50% for 2011, and respondent's appraiser calculating economic obsolescence at 53% for 2010 and 55% for 2011. Petitioner's appraiser employed a gross margin and inutility analysis to determine the existence of economic obsolescence, and respondent's appraiser calculated economic obsolescence using electricity price suppression. The tribunal found petitioner's appraiser's method to be supported by the evidence. Respondent has failed to meet its burden of showing that the tribunal adopted a wrong legal principle when determining that the Covert plant suffered from economic obsolescence and the amount of economic obsolescence.

---

[6] Petitioner's appraisal indicates that "[t]he scale factor represents the cost-to-capacity concept in which the facilities of different capacities varies exponentially rather than linearly because of economies of scale. The scale factor of 0.6 was derived based on studies of the historical cost of different-capacity natural gas-fired power plants."

D.  Replacement Cost New less Depreciation

Respondent argues that petitioner's appraiser improperly calculated replacement cost new less depreciation by "failing to follow the formula in a textbook[7] that petitioner utilized in his appraisal process" and deducting economic obsolescence before deducting functional obsolescence.  Respondent contends that the textbook provides that "the last step in the cost approach – *after* accounting for depreciation and functional obsolescence – is determining the discount for economic obsolescence."

Relying on the textbook, respondent asserts that petitioner's appraiser erroneously applied the discount for functional obsolescence as the last step in the cost approach.  The textbook relied upon by respondent states that "[w]e have discussed the cost approach using a very distinct sequence or order:  current cost new less physical deterioration, functional obsolescence, and economic obsolescence" and that "[t]his is the generally accepted method for deducting the elements of depreciation from the cost new."  However, respondent fails to acknowledge that the text goes on to state:

> This is the normal sequence for calculating and applying depreciation when using the cost approach.  The rationale for calculating depreciation in this sequence is that it, in most instances, accounts for depreciation in the order that it occurs. *However, there may be occasions when the facts or economic logic will dictate that the sequence of deductions from cost new should be different.  . . .* The most important point, however, is that when using the cost approach, an appraiser should strive to segregate the various elements of depreciation and avoid doubling-up on or omitting some form of depreciation.
>
> *The sequence of deductions in the cost approach is also affected by the methodology used to derive the depreciation amounts.* Mathematically, the order of the percentage deductions is not important; the result will be the same.  The sequence of deductions must be consistent with the development of the deductions.  [*Id*. at 88; emphasis added.]

Respondent has offered no authority or analysis, other than the portion of the textbook on which it relies, to support its argument.  That same text, however, provides that there may be occasions when the facts or economic logic will dictate that the sequence of deductions from replacement cost new should be different.  Respondent has failed to meet its burden of proving that the tribunal made an error of law in calculating replacement cost new less depreciation.

---

[7] It appears that respondent is referring to *Valuing Machinery and Equipment:  The Fundamentals of Appraising Machinery and Technical Assets* (Washington, D.C.; Donahue Group 3rd ed., 2011).

## IV. MOTION FOR RELIEF FROM JUDGMENT

Respondent argues that the Tax Tribunal abused its discretion by denying respondent's motion for relief from judgment[8] under MCR 2.612(C)(1)(b) and (f).[9] MCR 2.612(C) applies to proceedings before the Tax Tribunal because there is no applicable Tax Tribunal rule. See 1999 AC, R 205.1111(4); *Signature Villas, LLC v Ann Arbor*, 269 Mich App 694, 705; 714 NW2d 392 (2006). We review the tribunal's decision regarding a motion for relief from judgment for an abuse of discretion. *Peterson v Auto Owners Ins Co*, 274 Mich App 407, 412; 733 NW2d 413 (2007).

A motion for relief from judgment under MCR 2.612(C)(1) may be granted under subsection (b) on the basis of "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under MCR 2.611(B), or under subsection (f) for "[a]ny other reason justifying relief from the operation of the judgment." MCR 2.612(C)(1)(b), (f).

### A. Hearsay/Best Evidence Rule

Respondent argues that the tribunal erred by considering unsupported hearsay testimony from petitioner's managing director regarding petitioner's responses to Consumers Energy's request for proposals (RFPs), without requiring the production of the actual response. We disagree.

Petitioner did not seek to elicit testimony about the specific contents of Consumers' RFPs or petitioner's responses, nor did petitioner seek to prove the contents of the RFPs or the content of the responses. Thus, the testimony was not offered to prove the truth of the matter asserted. MRE 801(c). With respect to the so-called "best evidence rule," MRE 1002 states that an original document is generally required to prove the content of a writing, "except as otherwise provided in these rules or by statute." MRE 1002; *In re Stowe*, 162 Mich App 27, 32–33; 412 NW2d 655 (1987). The best evidence rule only applies when the contents of a writing are in issue. *People v Alexander*, 112 Mich App 74, 76; 314 NW2d 801 (1981). Petitioner did not not

---

[8] Respondent filed a motion for relief from judgment in this Court in which it asserted that it discovered in March 2014 that, while this matter was pending before the tribunal, petitioner was attempting to negotiate a sale of its plant to Consumers Energy. It also asserted that petitioner appeared before the Michigan Public Service Commission (MPSC) in an effort to convince it to reject a plan for Consumers to construct a new electricity plant and have Consumers purchase the Covert plant. Respondent alleged that during the proceedings before the MPSC petitioner touted its facility as being state of the art, although it offered contrary evidence before the tribunal and the tribunal reduced the property's value because the plant suffered from obsolescence. This Court remanded the matter to the tribunal to allow respondent to file a motion for relief from judgment.

[9] Respondent originally sought relief under MCR 2.612(C)(1)(b), (c), and (f), but at the conclusion of the evidentiary hearing abandoned its request under subsection (c).

elicit testimony regarding the contents of the RFPs or petitioner's responses. Rather, it was respondent who wished to explore the contents of the documents. Indeed, testimony regarding the specific contents of petitioner's responses to the RFPs – which was the information sought by respondent – was elicited during respondent's cross-examination. Respondent has failed to demonstrate that the tribunal abused its discretion by admitting the testimony.

## B. MCR 2.612(C)(1)(b)

Under MCR 2.612(C)(1)(b), a trial court may relieve a party of a final judgment or order on the basis of new evidence "which by due diligence could not have been discovered in time to move for a new trial under MCR 2.611(B)." There are four requirements that must be met for newly discovered evidence to support a motion for postjudgment relief: (1) the evidence, not simply its materiality, must be newly discovered, (2) the evidence must not be merely cumulative, (3) the newly discovered evidence must be such that it is likely to change the result, and (4) the party moving for relief from judgment must be found to have not been able to produce the evidence with reasonable diligence. *South Macomb Disposal Auth v American Ins Co,* 243 Mich App 647, 655; 625 NW2d 40 (2000). Here, the purported new evidence consisted of respondent's discovery that petitioner appeared before the Michigan Public Service Commission (MPSC) while this matter was pending in the tribunal and testified that it had submitted proposals to sell the Covert plant to Consumers Energy for a price comparable to the proposed $750 million cost of building a new facility. The tribunal found that while respondent had newly discovered the testimony in the MPSC proceeding, respondent failed to prove that that the evidence was not previously discoverable or that the evidence was likely to change the tribunal's final valuation decision.

Respondent now argues that the tribunal erred by finding that the evidence was public knowledge and discoverable with reasonable diligence before the deadline for moving for a new trial on February 26, 2014. Respondent's acknowledgement that a summary of the MPSC testimony was reported by the press in November 2013 undercuts its argument on appeal that the tribunal erred by finding that petitioner's responses to Consumers' RFPs were public knowledge. Respondent has failed to demonstrate that the purported new evidence could not have been discovered earlier with reasonable diligence.

Further, even assuming that respondent could not have discovered the evidence with reasonable diligence, the tribunal thoroughly articulated why the new evidence was not likely to change the tribunal's determination of TCV. Respondent does not specifically address or challenge the tribunal's detailed findings. Rather, respondent contends that the tribunal was obligated to "evaluate the evidence independently as the final agency administering the property tax law in Michigan." Respondent's conclusory statement, without any argument or analysis, is insufficient to challenge the tribunal's finding that the purported new evidence was not likely to change the result. *Prins v Michigan State Police*, 299 Mich App 634, 640; 831 NW2d 867 (2013). Respondent has failed to demonstrate that the tribunal abused its discretion by denying respondent's motion for relief from judgment on the basis of newly discovered evidence.

## C. MCR 2.612(C)(1)(f)

In order for relief to be granted under MCR 2.612(C)(1)(f), the following three requirements must be fulfilled: (1) the reason for setting aside the judgment must not fall under subsections (a) through (e), (2) the substantial rights of the opposing party must not be detrimentally affected if the judgment is set aside, and (3) extraordinary circumstances must exist that mandate setting aside the judgment in order to achieve justice. Generally, relief is granted under subsection (f) only when the judgment was obtained by the improper conduct of the party in whose favor it was rendered. *King v McPherson Hosp*, 290 Mich App 299, 304; 810 NW2d 594 (2010).

Respondent argues that petitioner improperly failed to report its costs by year, amount, and property type and that the tribunal wrongfully denied relief for petitioner's improper conduct under this section. The issue of costs, however, was first raised by respondent at the hearing with respect to newly discovered evidence under subsection (C)(1)(b). The tribunal rejected respondent's claim regarding the reporting of cost information on the ground that the argument was beyond the scope of this Court's remand. Further, petitioner's lack of records pertaining to the actual cost new of the Covert plant was an issue litigated during the initial proceedings in the tribunal. To the extent that respondent seems to argue that petitioner's failure to present such costs constituted improper conduct under subsection (C)(1)(f), this was not an argument that was presented in the tribunal.

Respondent also argues that petitioner engaged in improper conduct when it presented "wholly inconsistent positions in the Tribunal and the MPSC regarding the *value* of the Covert Plant." Specifically, respondent argues that it was improper for petitioner to present an appraisal with a disparate value compared to the price for which it proposed to sell the equity interest in the plant to Consumers. The tribunal found that the testimony being offered at the MPSC hearing was for a different purpose than the testimony offered in the tribunal, and that "appraisal evidence of the market value at a date occurring *in the past* and a proposal to sell which is designed to obtain a profit at some point *in the future* are simply not comparable scenarios whereby the Tribunal could finding something resembling fraud." Although respondent disagrees with the tribunal's determination, respondent has failed to demonstrate that the tribunal abused its discretion by denying the motion for relief from judgment under MCR 2.611(C)(1)(f) on the grounds that the MPSC testimony is not contradictory to the testimony presented at the tribunal and that the facts in this case did not amount to extraordinary circumstances.

## V. DISCRETIONARY RULINGS

Respondent argues that the tribunal abused its discretion by denying a stipulated motion to extend the deadline set by the tribunal for filing valuation disclosures. It concedes that it timely filed its valuation disclosure, but contends that the disclosure was "incomplete." Respondent does not provide any explanation of the manner in which its valuation disclosure

was incomplete, and offers no explanation of how it was prejudiced by filing the valuation disclosure that it did file.[10] "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Peterson Novelties, Inc v City of Berkley,* 259 Mich App 1, 14; 672 NW2d 351 (2003).

Respondent also argues that the tribunal erred as a matter of law by failing to comply with MCL 205.743(1), which states:

> If the date set by law for the payment of taxes has passed, the tribunal shall not make a final decision on the entire proceeding until the taxes are paid. *This requirement may be waived at the tribunal's discretion.* [Emphasis added.]

MCL 205.743(1) clearly grants discretion to the tribunal regarding its enforcement. Contrary to respondent's suggestions, nothing in the plain language of MCL 205.743(1) requires the tribunal to "consider the fiscal impact on the affected local units" when exercising its discretion. Respondent has failed to show that the tribunal abused its discretion by waiving the requirement that the tax be paid before the tribunal made a final decision in the proceeding.[11]

## VI. ALLOCATION OF PERSONAL PROPERTY

Under MCL 211.903(3), for taxes levied after December 31, 2007, "personal property classified under section 34c of the general property tax act, 1893, PA 206, MCL 211.34c, as industrial property" was exempt from the state education tax. In 2011, following a classification appeal filed by petitioner to the STC, the STC directed respondent to create a second industrial personal property parcel for gas turbines only. Thus, for tax year 2011, there were three parcels between which the tribunal had to allocate its TCV determination: a real property parcel, an industrial personal property parcel for a turbine, and a second industrial personal property parcel. The parties disagreed with respect to whether "a turbine" included simply a turbine, without a generator or other incidental costs, or whether a turbine had to be operational, which would include a generator and other incidental costs to make a turbine operational. Petitioner asserted

---

[10] We note that respondent's appraiser provided testimony at the hearing and was thoroughly examined and cross-examined regarding his valuation of the property.

[11] In a footnote in its brief, respondent generally asserts that the tribunal denied various motions, including a motion to compel discovery, a motion filed by a non-party to intervene, and a motion to set aside a protective order, all of which respondent contends were adverse rulings that prejudiced respondent's ability to present its case. Respondent fails to explain how those rulings caused it injury, what was sought to be compelled, or why the tribunal's decision was an abuse of discretion, and fails to provide any supporting facts. Complaining about the tribunal's discretionary decisions in a footnote without any legitimate briefing or citations to the record is tantamount to abandoning it. See, e.g, *Mitcham v Detroit,* 355 Mich 182, 203; 94 NW2d 388 (1959).

that under MCL 211.903 and MCL 380.1211[12], "a turbine" is only the turbine itself, excluding generators, and that a turbine need not be operational. Respondent asserted that a turbine must be an operational turbine, which necessarily includes the generator and incidental costs needed to make the turbine operational and capable of generating electricity.

The tribunal essentially agreed with respondent's position when it defined "turbine" by relying on the definition of "true cash value" and concluded that a turbine includes all parts and costs necessary to make the turbine operational. We are unclear regarding the argument that respondent is attempting to make. To the extent that respondent asserts that the tribunal was required to interpret MCL 380.1211(10)(e)(*ii*), this assertion is misplaced because that subsection did not become effective until December 31, 2011. Respondent has failed to demonstrate that the tribunal made an error of law or adopted a wrong legal principle.

Affirmed. Petitioner, being the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Peter D. O'Connell
/s/ Donald S. Owens
/s/ Michael J. Kelly

---

[12] MCL 211.903 and MCL 380.1211 were both amended, effective December 31, 2011. MCL 211.903(3)(b) provided, "Beginning December 31, 2011, a turbine powered by gas, steam, nuclear energy, coal, or oil the primary purpose of which is the generation of electricity for sale is not eligible for the exemption under this subsection." See 2011 PA 318. MCL 380.1211(10)(e)(*ii*) provided, "Beginning December 31, 2011, industrial personal property does not include a turbine powered by gas, steam, nuclear energy, coal, or oil the primary purpose of which is the generation of electricity for sale." See 2011 PA 317. Neither of the amended statutes was in effect in 2011.